Walter Milton CORRELL, Jr.,
Petitioner–Appellee,

v.

Charles E. THOMPSON, Warden, Mecklenburg Correctional Facility, Respondent–Appellant.

Walter Milton CORRELL, Jr.,
Petitioner–Appellant,

v.

Charles E. THOMPSON, Warden, Mecklenburg Correctional Facility, Respondent–Appellee.

Nos. 94–4007, 94–4012.

United States Court of Appeals,
Fourth Circuit.

Argued April 6, 1995.

Decided Aug. 24, 1995.

**ARGUED:** Katherine P. Baldwin, Asst. Atty. Gen., Office of the Atty. Gen., Richmond, VA, for appellant. Joseph D. Tydings, Anderson, Kill, Olick & Oshinsky, Washington, DC, for appellee. **ON BRIEF:** James S. Gilmore, III, Atty. Gen. of Virginia, Office of the Atty. Gen., Richmond, VA, for appellant. Lois Casaleggi Wolf, Anderson, Kill, Olick & Oshinsky, Washington, DC; Robert E. Pokusa, Kevin P. Sherburne, Paul, Hastings, Janofsky & Walker, Washington, DC; Donald R. Lee, Michele Brace, Virginia Capital Representation Resource Center, Richmond, VA, for appellee.

Before WILKINSON and WILKINS, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

Vacated and remanded with instructions by published opinion. Judge WILKINS

wrote the opinion, in which Judge WILKINSON and Senior Judge PHILLIPS joined.

## OPINION

WILKINS, Circuit Judge:

Walter Milton Correll, Jr. brought this action[1] pursuant to 28 U.S.C.A. § 2254 (West 1994), challenging the constitutionality of his Virginia convictions for capital murder and robbery and his resulting sentences of death and life imprisonment. The district court vacated Correll's convictions and sentences and ordered that Correll be released unless retried by the Commonwealth within six months. *Correll v. Thompson*, 872 F.Supp. 282, 298 (W.D.Va.1994). It concluded that a confession admitted into evidence during the Commonwealth's case against Correll was obtained after he had invoked his right to counsel and in response to custodial interrogation by law enforcement officers in violation of the principle established in *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). *Id.* at 289–92. Alternatively, the district court determined that the writ of habeas corpus should issue because this confession was tainted by two earlier ones that had been elicited in violation of *Edwards*. *Id.* at 292–94. The Commonwealth appeals the decision of the district court to grant the writ of habeas corpus, and Correll cross appeals the refusal of the district court to grant the writ on the basis of other claims raised in his petition. We conclude that the district court erred in granting the writ.

## I.

Correll robbed and murdered Charles W. Bousman, Jr. on August 11, 1985. The evidence and testimony presented at Correll's trial demonstrated that on the evening of August 10th, Correll met John Dalton and Richard Reynolds at the home of Rhonda Small in Roanoke, Virginia. The three men left Small's residence either late that night or in the early morning hours of August 11th and walked to an overpass at Interstate 581.

During the walk, Correll began to discuss "getting a car," and as they neared the overpass, Correll instructed Dalton and Reynolds to wait on a hill next to the overpass while he remained on the street below. A maroon Buick automobile driven by Bousman soon stopped beside Correll, who entered the front passenger seat of the vehicle and motioned for Dalton and Reynolds to approach. Bousman noticed Dalton behind the Buick and exited the vehicle to investigate. Correll followed Bousman, seized him in a stranglehold, and choked him until he lost consciousness. After stealing Bousman's wallet and placing him in the trunk of the automobile, Correll departed in the Buick with Dalton and Reynolds.

Correll drove to a wooded area of Franklin County, Virginia and robbed Bousman, who was still unconscious, of a ring and a pocket watch. Correll then removed Bousman from the trunk and kicked him in the face four to five times as he lay on the ground. Correll and Dalton dragged Bousman into the woods where Correll produced a hunting knife discovered in the Buick during the drive. Correll hurled the knife into Bousman's body, removed it and handed it to Reynolds, who made a minor cut on Bousman's neck with it. Correll retrieved the knife and again threw it into Bousman. Correll then pulled the knife from Bousman's body and instructed Dalton "to get rid of it." The three men left in the Buick, and during the return trip to Roanoke, at Correll's direction, Dalton pitched the knife beneath a bridge before returning to Small's home.

Bousman's badly decomposed body was discovered in Franklin County approximately one week later. An autopsy revealed two stab wounds to the chest, one that penetrated the right lung—severing the pulmonary artery and causing Bousman's death—and another that caused Bousman's left lung to collapse and which, untreated, would have resulted in his death.

After Dalton and Reynolds implicated Correll in the murder, he was taken into custody

---

1. Correll named Charles E. Thompson, Warden of the Mecklenburg Correctional Facility where Correll is incarcerated, as Respondent in the action. For ease of reference we refer to Respondent as the Commonwealth.

by Roanoke police on Friday, August 16th. Although Correll invoked his right to counsel during police questioning, the police did not honor his request for counsel by ceasing interrogation, and Correll gave two confessions that evening—one to a Roanoke police detective and another later that night to Investigator Overton of the Franklin County Sheriff's Department.

On Sunday, August 18th, Correll was transported from the jail in Roanoke, where he was being detained, to Appomattox, Virginia to undergo a polygraph examination. Following the polygraph examination, Correll was transported by Officer Ferguson of the Franklin County Sheriff's Department to the Franklin County jail to be processed on the arrest warrant for the murder and robbery of Bousman. While detained in a holding cell there, Correll asked to speak with Investigator Overton. Correll initiated this contact so that he could explain the results of the polygraph examination to Overton. After Investigator Overton gave Correll *Miranda* warnings, Correll waived these rights and began to answer Investigator Overton's questions. This questioning ultimately led to another confession.

Correll moved to suppress all three confessions. The state court ruled that the first two confessions had been obtained in violation of *Edwards* and were therefore inadmissible; they were not offered against Correll at trial. However, the state court refused to suppress the third confession, ruling that Correll had initiated the conversation with Investigator Overton; that Correll had made an intelligent waiver of his rights; and that the third confession was not tainted by the earlier two confessions of August 16th.

Correll subsequently waived his right to a jury trial and was tried and convicted of capital murder and robbery. He was sentenced to death for the murder after the judge found it was outrageously and wantonly vile, horrible, and cruel and was sentenced to life imprisonment for the robbery.

These convictions and sentences were upheld on direct appeal. *Correll v. Commonwealth*, 232 Va. 454, 352 S.E.2d 352 (1987). The Supreme Court of Virginia specifically rejected Correll's claim that the third confession should have been suppressed on the basis that Investigator Overton actually had initiated the questioning or because the questioning at the Franklin County jail was merely a continuation of the polygraph examination. *Id.*, 352 S.E.2d at 356–57. In addition, the Supreme Court of Virginia conducted a proportionality review in accordance with Va. Code Ann. § 17–110.1(C)(2) (Michie 1988) and concluded that Correll's sentence was not disproportionate or excessive compared to the sentences imposed in comparable capital murder cases. *Id.*, 352 S.E.2d at 360–61. The United States Supreme Court denied Correll's petition for certiorari, and his conviction became final on June 15, 1987. *Correll v. Virginia*, 482 U.S. 931, 107 S.Ct. 3219, 96 L.Ed.2d 705 (1987).

Correll then brought a state habeas proceeding raising a litany of issues. The state habeas court held that all of the issues advanced, except Correll's ineffective assistance of counsel claims, were procedurally barred and accordingly dismissed them. The state habeas court then conducted a plenary evidentiary hearing on Correll's claims of ineffective assistance of counsel. Among these claims was one that counsel had been ineffective in failing to investigate adequately the circumstances surrounding the third confession. Following this hearing, the court denied relief.[2] Correll appealed this decision to the Supreme Court of Virginia, but review was denied. Thereafter, the United States Supreme Court again denied Correll's petition for certiorari.

■ In February 1991, Correll filed this § 2254 petition, his first, in the district court. The Commonwealth immediately moved to dismiss. It argued that many of Correll's claims were procedurally barred. And, with respect to those issues that were not procedurally barred, the Commonwealth asserted

---

**2.** After the hearing, the state habeas court ordered Correll and the Commonwealth to submit proposed findings of fact. The court adopted verbatim the proposed findings of fact submitted by the Commonwealth, incorporating them by reference into its order denying Correll's ineffective assistance of counsel claims.

that the factual findings of the state courts were entitled to a presumption of correctness under § 2254(d) and that, based on these findings, Correll was not entitled to relief. For nearly three years thereafter the petition languished; at last, in December 1993, the district court conducted a hearing on the Government's motion to dismiss. In May of 1994, the district court finally ruled, granting the Commonwealth's motion, dismissing Correll's petition, and concluding that an evidentiary hearing on the petition was not necessary since Correll had had a full and fair hearing in the state proceedings. However, in July 1994, the court granted Correll's motion pursuant to Federal Rule of Civil Procedure 59(e)[3] and vacated its prior decision. The following month, three and one-half years after Correll filed the petition, the district court entered an order granting the writ on the basis of errors it perceived concerning the admission of the third confession.[4]

The Commonwealth appeals, maintaining that the admission of the confession was not error or, alternatively, that any error was harmless. Correll cross appeals, arguing that the district court erred in dismissing as procedurally barred his claim that his attorney was ineffective for deliberately misleading the state trial court as to the reason for seeking to have it decide the case and for inadequately advising him concerning the consequences of waiving his right to a jury trial; in concluding that the factual findings of the state courts were entitled to a presumption of correctness; and in failing to address his claim that the proportionality review conducted by the Supreme Court of Virginia violated his right to due process. We address these claims seriatim.

## II.

Prior to custodial interrogation an accused must be informed of his right to remain silent and his right to an attorney; if an accused invokes his right to counsel, "the interrogation must cease until an attorney is present." *Miranda v. Arizona,* 384 U.S. 436, 474, 86 S.Ct. 1602, 1628, 16 L.Ed.2d 694 (1966). Moreover, in *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), the Court established the bright-line rule that an accused who invokes his right to counsel "is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." *Id.* at 484–85, 101 S.Ct. at 1885. Thus, in analyzing a claim that law enforcement officers have violated the principle established in *Edwards,* a court must first determine whether the defendant invoked his right to counsel. *Smith v. Illinois,* 469 U.S. 91, 95, 105 S.Ct. 490, 492, 83 L.Ed.2d 488 (1984) (per curiam). If so, a defendant's responses to subsequent questioning are admissible only if the defendant initiated the further discussions with the police and the defendant knowingly and intelligently waived his right to counsel. *Id.*[5]

---

3. Because Correll's attorneys did not receive notice of the decision of the district court until more than ten days after entry of the judgment, Correll did not timely file a motion to alter or amend. *See* Fed.R.Civ.P. 59(e). Instead, Correll moved pursuant to Federal Rule of Civil Procedure 60(b) for relief from the judgment. The district court granted this motion, vacated its prior judgment, and reentered it so that Correll could file a timely Rule 59(e) motion.

 The Commonwealth urges that the district court erred in granting relief pursuant to Rule 60(b) and in vacating and reentering its judgment to permit Correll to file the timely Rule 59(e) motion. We find no error. Through no fault of their own, neither Correll nor his attorneys received notification of the entry of the decision and judgment of the district court within the time for filing a timely Rule 59(e) motion. And, the Commonwealth suffered no prejudice

from the grant of relief. Under these circumstances, we cannot conclude that the district court abused its discretion in granting relief from the judgment under Rule 60(b). *See* 11 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* §§ 2858, 2864 n. 28 (1973).

4. We are very concerned by the excessive delay— over three years—between the filing of the petition and the final decision by the district court. Trial and appellate courts have the responsibility to address and decide all matters in a timely fashion.

5. The Commonwealth argues that Correll seeks to have this court apply a "new rule of constitutional law" because not all reasonable jurists would have felt compelled to accept his claim on June 15, 1987 when his conviction became final. Since the nonretroactivity principle of *Teague v.*

## A.

■ A suspect invokes his right to counsel when his request is "sufficiently clear[ ] that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Davis v. United States,* —— U.S. ——, ——, 114 S.Ct. 2350, 2355, 129 L.Ed.2d 362 (1994). The Commonwealth contends that Correll did not invoke his right to counsel because his request for counsel was not clear. We disagree.[6]

■ Detective Dudley testified during the suppression hearing that he first saw Correll at approximately 5:00 p.m. on August 16th soon after Correll was taken into custody, and he began interrogating him. After a short period of questioning, Correll stated that he thought he wanted an attorney. Although we do not know Correll's exact words, Detective Dudley testified repeatedly during the suppression hearing that Correll requested an attorney.

The state trial court concluded as a factual matter that Correll invoked his right to counsel after hearing this unequivocal testimony, and the district court accepted this finding. We find no basis to disturb it. Further, Correll's request for counsel was unequivocal. *See Cannady v. Dugger,* 931 F.2d 752, 755 (11th Cir.1991) (holding "I think I should call my lawyer" an unequivocal request for counsel); *Shedelbower v. Estelle,* 885 F.2d 570, 571, 573 (9th Cir.1989), *cert. denied,* 498

*Lane,* 489 U.S. 288, 299–316, 109 S.Ct. 1060, 1069–78, 103 L.Ed.2d 334 (1989) (plurality), has been raised by the Commonwealth, we may not apply or announce a new rule of constitutional law on collateral review unless the rule falls within one of two narrow exceptions. *Caspari v. Bohlen,* —— U.S. ——, ——, 114 S.Ct. 948, 953, 127 L.Ed.2d 236 (1994). However, all of the principal Supreme Court decisions on which Correll relies to support his claim of an *Edwards* violation were decided prior to June 15, 1987. The question presented to us merely requires the application of these decisions to a new set of facts—not an extension of precedent to create a new rule. *See Stringer v. Black,* 503 U.S. 222, 227–29, 112 S.Ct. 1130, 1134–36, 117 L.Ed.2d 367 (1992); *Turner v. Williams,* 35 F.3d 872, 884–86 (4th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1359, 131 L.Ed.2d 216 (1995).

**6.** How the decision concerning whether a defendant has unambiguously invoked his right to

U.S. 1092, 111 S.Ct. 975, 112 L.Ed.2d 1060 (1991). Therefore, we agree that Correll invoked his right to counsel.

## B.

■ The question then becomes whether Correll reinitiated contact with Investigator Overton or whether Correll's third confession was a result of police interrogation. In *Rhode Island v. Innis,* 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980), the Supreme Court defined "interrogation" for purposes of applying *Edwards.* The Court noted that "interrogation" "must reflect a measure of compulsion above and beyond that inherent in custody itself." *Id.* at 300, 100 S.Ct. at 1689. While it is clear that express questioning by the police constitutes "interrogation," the Court ruled that other police practices also may amount to "interrogation." Noting that police could use indirect methods to obtain information from suspects without directly questioning them and that the protection afforded by *Miranda* would have little meaning if these latter types of practices could be used without the strictures of *Miranda,* the Court held that "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect" constitute interrogation. *Id.* at 301, 100 S.Ct. at 1689 (footnote omitted).

counsel should be reviewed has divided the courts of appeals. *Compare United States v. Uribe–Galindo,* 990 F.2d 522, 523 (10th Cir.1993) (stating that what defendant said is factual determination, but "[w]hether those words are sufficient to invoke right to counsel is a legal determination"), *and United States v. de la Jara,* 973 F.2d 746, 750 (9th Cir.1992) (same), *with Lord v. Duckworth,* 29 F.3d 1216, 1220 (7th Cir.1994) (generally, whether defendant invoked *Miranda* right is a question of fact). This court has not directly addressed the issue. *Cf. Poyner v. Murray,* 964 F.2d 1404, 1411 (4th Cir.) (apparently treating the question as one of law and conducting a de novo review), *cert. denied,* —— U.S. ——, 113 S.Ct. 419, 121 L.Ed.2d 342 (1992). We need not decide this question because whether we defer to the factual finding of the state court or review the issue de novo, we reach the same conclusion.

After an evidentiary hearing on Correll's motion to suppress, the state trial judge accepted Investigator Overton's version of the facts, *i.e.*, that Correll had initiated the questioning that led to the third confession, and admitted the third confession. This finding was affirmed by the Supreme Court of Virginia. *Correll,* 352 S.E.2d at 357. Although accepting these facts as determined by the state court, *see Sumner v. Mata,* 449 U.S. 539, 546–47, 101 S.Ct. 764, 768–69, 66 L.Ed.2d 722 (1981); 28 U.S.C.A. § 2254(d), the district court concluded that "[f]or [Correll] to explain the results of this examination, he had to know the results," and Correll "could only have known the results if someone told him." *Correll,* 872 F.Supp. at 291. The court then determined that "[t]he results must have shown that [Correll] did not tell the truth during the polygraph and/or that he had made statements inconsistent with his earlier statements" or Correll "would not have felt the need to attempt to 'explain what went wrong' during the polygraph." *Id.* at n. 14. Based on these deductions, the district court concluded that the disclosure of the polygraph results to Correll amounted to interrogation because the officers should have known it was likely to elicit a response from Correll and that the third confession was therefore an uncounseled response to this interrogation in violation of *Edwards. Id.* at 291.

■ Without deciding and only for purposes of this opinion, we assume that revealing the results of a polygraph examination under some circumstances could amount to interrogation in violation of *Edwards.* Clearly, however, such is not always the case. For example, in *Wyrick v. Fields,* 459 U.S. 42, 103 S.Ct. 394, 74 L.Ed.2d 214 (1982) (per curiam), the defendant, who was charged with raping an 81–year–old woman, had invoked his right to counsel but thereafter made a knowing, intelligent, and voluntary waiver of that right and agreed to submit to a polygraph examination. *Id.* at 43–46, 103 S.Ct. at 394–96. At the conclusion of the test, the examiner disclosed that the defendant's answers had indicated dishonesty and asked the defendant if he wished to explain them. *Id.* at 44, 103 S.Ct. at 394. The defendant then made a statement that he had

engaged in consensual sexual intercourse with the woman; this response was used against him during his trial. *Id.* at 45, 103 S.Ct. at 395. The Supreme Court held that by requesting the polygraph the defendant had initiated interrogation and his waiver included not only the polygraph questions but the post-test questioning; thus, the interrogation did not violate *Edwards. Id.* at 47, 103 S.Ct. at 396. Under the reasoning of *Wyrick,* if Correll requested the opportunity to submit to the polygraph examination and knowingly and voluntarily waived his rights prior to taking the test, the later disclosure of the results of the polygraph examination would not have amounted to police-initiated interrogation.

■ Further, even in those instances in which disclosure of polygraph results constitutes interrogation, not all statements made by a defendant afterward can be deemed to be the result of the interrogation. *Cf. McFadden v. Garraghty,* 820 F.2d 654, 660–61 (4th Cir.1987) (noting that break in custody may "sever any causal link between the initial unlawful interrogation" and later statements). Accordingly, if Correll was told of the results by the polygraph examiner early in the day while he was in Appomattox, it would not necessarily follow that his desire to converse with Investigator Overton that evening in Franklin County was a "response" to interrogation.

The district court failed to examine the facts surrounding Correll's polygraph examination, instead apparently adopting the position that any disclosure of polygraph results insulates all subsequent, uncounseled statements by the defendant. For the reasons set forth above, the district court was in error.

The question remains, however, whether the factual circumstances surrounding Correll's polygraph examination demonstrate that the disclosure of the results should be considered interrogation and whether Correll's third confession should be considered a response to the disclosure. But, although the record indicates that the polygraph examiner told Correll that his response to a question concerning whether he had removed a ring from Bousman's body indicated decep-

tion, there is a complete dearth of information in the record concerning the circumstances surrounding Correll's decision to submit to the polygraph examination or any further information pertaining to the timing or events surrounding the disclosure of the results. Correll simply failed to develop these facts during the state court proceedings.

■■■ When the state has given a petitioner a full and fair hearing on a claim and he has failed to develop the material facts supporting it, he is not entitled to develop further facts in a federal habeas evidentiary hearing unless he demonstrates either cause for the failure and prejudice resulting therefrom or a fundamental miscarriage of justice. *Keeney v. Tamayo–Reyes*, 504 U.S. 1, 8–12, 112 S.Ct. 1715, 1719–21, 118 L.Ed.2d 318 (1992). There is no question but that Correll was given a full and fair opportunity during the state suppression hearing proceedings to develop the facts surrounding the polygraph examination.[7] And, Correll does not argue that cause and prejudice exist to excuse his failure to do so or that a fundamental miscarriage of justice would result from our failure to permit him to develop the facts now. *See Teague v. Lane*, 489 U.S. 288, 298, 109 S.Ct. 1060, 1068, 103 L.Ed.2d 334 (1989) (possible cause and prejudice not considered when petitioner fails to argue that any exist). Indeed, Correll does not assert before this court what additional facts could be developed that would support his claim.

### C.

■■■ Finally, we consider whether Correll voluntarily, knowingly, and intelligently waived his right to counsel prior to giving the third confession. A waiver is voluntary if it was " 'the product of a free and deliberate choice rather than intimidation, coercion, or deception' on the part of the police." *Poyner v. Murray*, 964 F.2d 1404, 1413 (4th Cir.) (quoting *Moran v. Burbine*, 475 U.S. 412, 421, 106 S.Ct. 1135, 1141, 89 L.Ed.2d 410 (1986)), *cert. denied,* —— U.S. ——, 113 S.Ct. 419, 121 L.Ed.2d 342 (1992).

The determination of whether a waiver was knowing and intelligent requires an examination of the totality of the circumstances surrounding the interrogation, including "the suspect's intelligence and education, age and familiarity with the criminal justice system, [and] the proximity of the waiver to the giving of the *Miranda* warnings." *Id.* (citations omitted).

■■■ There is no evidence of misconduct by law enforcement officers that could support a conclusion that Correll's waiver was involuntary. During the suppression hearing, Correll testified unequivocally that he was not subjected to any form of physical coercion or deprivation by the police. And, in addressing the admissibility of the confession, the Supreme Court of Virginia found that the conduct of the law enforcement officers was not even an issue because neither Correll nor defense counsel had made any claim that coercive methods were employed to elicit the confession. Further, the totality of the circumstances indicates that Correll's waiver was knowing and intelligent. Although Correll possessed an I.Q. of only 68, he was 24 years old and had had numerous experiences with law enforcement and *Miranda* warnings; the trial court characterized Correll as "streetwise." *See Vance v. Bordenkircher*, 692 F.2d 978, 981 (4th Cir. 1982), *cert. denied,* 464 U.S. 833, 104 S.Ct. 114, 78 L.Ed.2d 114 (1983). Additionally, Correll had been given *Miranda* warnings repeatedly since he was taken into custody on Friday evening, the most recent of which was immediately preceding the waiver. We therefore agree with the state courts that Correll's waiver was voluntary, knowing, and intelligent.

### D.

In sum, the district court erred in concluding on the present record that the third confession was obtained as a result of police interrogation because the record does not demonstrate that disclosure of the polygraph results constituted interrogation. And, be-

---

7. In addition, Correll was permitted to explore the facts surrounding the third confession during the state habeas proceedings concerning coun-

sel's alleged ineffectiveness in failing to investigate them.

cause Correll failed to develop the material facts surrounding the polygraph examination, and because his failure to do so cannot be excused by a showing of cause and prejudice or a fundamental miscarriage of justice, Correll is not entitled to an evidentiary hearing to develop these facts. Further, the facts established· in the state courts demonstrate that Correll's waiver of his rights was voluntary, knowing, and intelligent. Thus, we hold that the district court erred in vacating Correll's conviction and sentence on this basis and turn to consider the alternative ground for the ruling of the district court.

### III.

■ The district court held that even if the third confession was not obtained in violation of *Edwards,* Correll's convictions and sentences should nevertheless be vacated because the third confession was tainted by the two prior confessions that were elicited in violation of *Edwards.* Applying the factors identified by this court in *McFadden,* 820 F.2d at 660–61, the district court reasoned that prior to giving the third confession Correll had been held in continuous, incommunicado custody for two days while being subjected to intermittent interrogation in violation of *Edwards;* thus, the third confession was tainted by the earlier ones obtained in violation of *Edwards.* We conclude that the reasoning of the district court was misdirected.[8]

■ In *Oregon v. Elstad,* 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985), the Supreme Court addressed whether a confession obtained after a suspect had been given *Miranda* warnings and had validly waived those rights is "tainted"—and hence not properly admitted in the prosecution's case in chief—because police had obtained a prior confession from the suspect in violation of *Miranda.* The Court explained that the *Miranda* rule creates protection broader than that provided by the Fifth Amendment, which is only concerned with "compelled testimony." *Id.* at 306–07, 105 S.Ct. at 1292. Drawing a sharp distinction between a situation in which the first confession is obtained as a result of police coercion and a situation in which the earlier confession is actually voluntary (but is presumed to be compelled under *Miranda),* the Court held that in the latter situation the prior confession could not be said to taint a later confession obtained after *Miranda* warnings and a valid waiver of rights. *Id.* at 304–14, 105 S.Ct. at 1290–96. The Court wrote that "endowing the psychological effects of *voluntary* unwarned admissions with constitutional implications would, practically speaking, disable the police from obtaining the suspect's informed cooperation even when the official coercion proscribed by the Fifth Amendment played no part in either his warned or unwarned confessions." *Id.* at 311, 105 S.Ct. at 1294. The Court further noted that even when the first confession is actually compelled "through un-

---

**8.** The Commonwealth asserts that Correll procedurally defaulted this claim in state court. We cannot agree. Correll raised the taint argument as one part of Claim E in his state habeas petition, which related generally to the admission of the third confession. The state habeas court summarily dismissed Claim E, holding it procedurally defaulted and citing *Brooks v. Peyton,* 210 Va. 318, 171 S.E.2d 243 (1969); *Hawks v. Cox,* 211 Va. 91, 175 S.E.2d 271 (1970); and *Correll v. Commonwealth,* 232 Va. 454, 352 S.E.2d 352 (1987). In its order denying Correll's petition to appeal from the state habeas decision, the Supreme Court of Virginia wrote that the procedural default rule of *Hawks* applied to the allegations contained in Correll's Claim E. The procedural default rule established in *Hawks* does not prevent a federal habeas court from reviewing the claim, however. *Turner,* 35 F.3d at 890. *Hawks* establishes a rule in the nature of collateral estoppel—that claims raised on direct appeal will not be reconsidered by a state habeas court

on collateral review. But, a dismissal under *Hawks* does not bar federal habeas review of claims that already may be properly considered by this court through their presentation on direct appeal. *See id.* The order of the Supreme Court of Virginia does·not differentiate Correll's taint claim from the other claims relating to the admission of the third confession that were decided by that court on the merits, leaving no basis for distinguishing its treatment of the taint claim from that received by those other claims. Thus, although we have every reason to believe that the order denying review of this claim under *Hawks* contains a scrivener's error (because Correll did not raise the taint claim in his brief to the Supreme Court of Virginia on direct appeal and because that court did not address this argument in its decision), we must accept the order of the Supreme Court of Virginia denying Correll's petition for review at face value and, accordingly, are compelled to reach the merits of this issue.

conscionable methods of interrogation, the Court has assumed that the coercive effect of the confession could, with time, be dissipated." *Id.* at 311–12, 105 S.Ct. at 1294. *Elstad* thus makes clear that when the initial confession is obtained in violation of the Fifth Amendment, a later voluntary confession may be tainted by the earlier one, but when the earlier confession merely violates the technical proscriptions of *Miranda,* no taint analysis is necessary.

 A breach of the rule established in *Edwards* is also a technical violation of *Miranda,* not a Fifth Amendment violation. The *Edwards* rule is simply a " 'second layer of prophylaxis for the *Miranda* right to counsel.' " *Davis,* — U.S. at ——–——, 114 S.Ct. at 2354–55 (quoting *McNeil v. Wisconsin,* 501 U.S. 171, 176, 111 S.Ct. 2204, 2208, 115 L.Ed.2d 158 (1991)). The prohibition on further questioning of a suspect who has invoked his right to counsel set forth in *Edwards,* " 'like other aspects of *Miranda* [,] is not itself required by the Fifth Amendment's prohibition on coerced confessions, but is instead justified only by reference to its prophylactic purpose.' " *Id.* at ——, 114 S.Ct. at 2355 (quoting *Connecticut v. Barrett,* 479 U.S. 523, 528, 107 S.Ct. 828, 832, 93 L.Ed.2d 920 (1987)).

 Under *Elstad* then, the first question that must be answered in addressing Correll's claim that the third confession was tainted by the earlier two is whether the initial confessions were obtained in violation of Correll's Fifth Amendment rights—*i.e.,* whether they were involuntary—or whether the confessions were voluntary, but obtained in technical violation of *Miranda.* The district court failed to consider this issue, proceeding directly to a taint analysis upon concluding that the first two confessions were obtained in violation of *Edwards.*[9] As *Elstad* makes plain, the failure of the district court to consider first whether the prior confessions were involuntary was error.

 "The Self–Incrimination Clause of the Fifth Amendment guarantees that no person 'shall be compelled in any criminal case to be a witness against himself.' " *Withrow v. Williams,* — U.S. ——, ——, 113 S.Ct. 1745, 1751, 123 L.Ed.2d 407 (1993) (quoting U.S. Const. amend. V). In determining whether a confession was compelled, a totality of the circumstances test is applied to ascertain "whether a confession ha[s] been made freely, voluntarily and without compulsion or inducement of any sort." *Id.* (internal quotation marks omitted). This question is one of law subject to de novo review; however, the subsidiary factual findings of the state court are entitled to a presumption of correctness. *Miller v. Fenton,* 474 U.S. 104, 112, 106 S.Ct. 445, 450, 88 L.Ed.2d 405 (1985).

 As noted above, Detective Dudley began questioning Correll at approximately 5:00 p.m. on Friday August 16th; soon thereafter, Correll indicated that he thought he wanted an attorney. Detective Dudley inquired whether there was any particular attorney that Correll wished to see, and after Correll informed the officer that he could not afford to hire an attorney, Detective Dudley asked Correll whether he wished to have a public defender represent him. Correll did not respond to this question, and the conversation turned to personal matters. A few minutes later Correll stated, "I don't want a lawyer," and Detective Dudley resumed questioning. During this questioning, and at Correll's request, officers played the taped confession of John Dalton. Correll then indicated that he wished to make a statement. Dudley again advised Correll of his *Miranda* rights and obtained a waiver before Correll confessed. The events culminating in the confession ended at approximately 7:00 p.m. Later that evening, officers from the Franklin County Sheriff's Department again questioned Correll, eliciting the second confession; this questioning ended just prior to midnight.

**9.** The district court apparently read *McFadden* to hold that taint analysis is required following an *Edwards* violation without regard to whether a statement taken in violation of *Edwards* was compelled in violation of the Fifth Amendment. However, *McFadden* did not directly address this issue, simply assuming the application of taint analysis and finding no taint present on the facts presented. *See McFadden,* 820 F.2d at 660–61.

The only factor militating toward a finding that these confessions were involuntary is Correll's I.Q. of 68, but this consideration is not dispositive. *See Vance,* 692 F.2d at 981. On the other hand, the trial court noted that Correll was streetwise and had had *Miranda* warnings administered to him on more than a dozen occasions in the past. Further, Correll was in custody only about seven hours prior to giving the second confession, was not deprived of "food, water, or anything like that," was not subjected to any sort of physical coercion, and was not induced to confess by promises or trickery. Thus, we conclude that the initial confessions were not obtained in violation of the Fifth Amendment. And, as such, the third confession could not have been tainted by them. Therefore, the district court erred in granting the writ on this basis.

## IV.

■ Even if the introduction of the third confession was error because it was obtained in violation of *Edwards* or was tainted by prior involuntary confessions, before a federal habeas court may grant relief as a result of the error, it must conclude that an error infecting state criminal proceedings is not harmless, *i.e.,* that the error "'had substantial and injurious effect or influence in determining the ... verdict.'" *Brecht v. Abrahamson,* —— U.S. ——, ——, 113 S.Ct. 1710, 1722, 123 L.Ed.2d 353 (1993) (quoting *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946)); *Smith v. Dixon,* 14 F.3d 956, 975 (4th Cir.) (en banc), *cert. denied,* —— U.S. ——, 115 S.Ct. 129, 130 L.Ed.2d 72 (1994). Thus, even if the admission of the confession had been error, Correll would not be entitled to habeas relief if we determine that the error was harmless. *See Arizona v. Fulminante,* 499 U.S. 279, 310, 111 S.Ct. 1246, 1265, 113 L.Ed.2d 302 (1991) (holding that introduction of involuntary confession may be reviewed for harmless error); *United States v. Mobley,* 40 F.3d 688, 694 (4th Cir.1994) (holding

*Edwards* error harmless), *cert. denied,* —— U.S. ——, 115 S.Ct. 2005, 131 L.Ed.2d 1005 (1995). In conducting harmless error analysis, this court reviews the record de novo to determine whether the confession has had a substantial and injurious effect on the verdict. *See Fulminante,* 499 U.S. at 295, 111 S.Ct. at 1257. And, when "the record is so evenly balanced that a conscientious judge is in grave doubt as to the harmlessness of the error," he should resolve the doubt in favor of the petitioner and grant relief. *O'Neal v. McAninch,* —— U.S. ——, ——, ——, 115 S.Ct. 992, 995, 999, 130 L.Ed.2d 947 (1995).[10]

■ While we recognize the probative sway a confession may carry, *see Fulminante,* 499 U.S. at 296, 111 S.Ct. at 1257, we conclude that the admission of the confession, even if it had been erroneous, was harmless. The evidence against Correll aside from the confession to Investigator Overton was overwhelming. Although no physical evidence linked Correll to the crime, other direct evidence of his participation was presented by John Dalton, one of the three men who abducted Bousman and an eyewitness to the events. The state trial judge specifically stated that he found Dalton's testimony to be credible, although plainly Dalton had a motive to present testimony that diminished his own responsibility in the crime. *See Smith v. Paderick,* 519 F.2d 70, 75–76 (4th Cir.), *cert. denied,* 423 U.S. 935, 96 S.Ct. 293, 46 L.Ed.2d 267 (1975). In addition, Rhonda Small testified that in the early morning hours of August 11th, Correll left her home with Dalton and Reynolds on foot and returned several hours later in a maroon automobile; she also testified that that night Correll confessed to her that he had murdered a man "for the car." Further, Lonnie Reynolds testified that Correll had confessed to him that he had murdered and robbed Bousman, including many details of the episode such as Correll twice throwing the knife into Bousman's chest. Finally, the admission of the confession did not permit the introduc-

---

10. Inexplicably, the district court failed to address whether the error it identified in the admission of the third confession amounted to no more than harmless error. Instead, having concluded that Correll's trial was tainted by error, it simply granted the writ. In view of the clear holdings of this court and the Supreme Court that this inquiry is required prior to granting habeas relief, the failure of the district court to engage in harmless error analysis is baffling.

tion of other damaging evidence that would not otherwise have been admissible. In sum, if the admission of the confession had been error, on the facts presented and in light of the other overwhelming evidence against Correll, we cannot conclude that the admission of the confession had a substantial and injurious effect on the verdict.

## V.

 On cross appeal, Correll maintains that the district court erred in failing to conclude that he was denied effective assistance of counsel because his trial attorney intentionally misrepresented to the court the basis for his request to waive his right to a jury trial and inadequately advised him of the consequences of that decision. The district court ruled that Correll's claim of ineffective assistance of counsel relating to the waiver of a jury trial was procedurally barred because Correll had failed to raise it in his state habeas proceedings. Our review of the record, however, demonstrates that Correll did present this claim in state court.

The portion of the claim raising his attorney's deliberate misrepresentation to the trial judge concerning the reason for seeking to have the court try the case was not raised in the state habeas petition as a separate claim, but was litigated by implied consent of the parties during the evidentiary hearing in the state habeas proceedings. The portion of the claim relating to whether Correll's attorney adequately advised him of the consequences of waiving his right to a jury trial was raised in the state habeas petition and rejected on the merits by the state habeas judge. Both issues were raised by Correll in his petition for review to the Supreme Court of Virginia. Thus, these arguments are not procedurally defaulted, and accordingly we turn to the merits.

 In order to be entitled to relief on this claim, Correll must show that his attorney's "representation fell below an objective standard of reasonableness" and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 2064, 2068, 80 L.Ed.2d

674 (1984). We need not consider whether counsel's representation fell below an objective standard of reasonableness because clearly Correll has not demonstrated a reasonable probability that but for counsel's errors the result of the proceedings would have been different. *Id.* at 697, 104 S.Ct. at 2069. As earlier stated, the evidence against Correll was overwhelming, and we have no doubt that had the case been presented to a jury the same result would have obtained.

## VI.

The remaining arguments advanced by Correll may be disposed of rather summarily.

 Correll contends that the district court erred in applying the § 2254(d) presumption of correctness to the factual findings of the state habeas court concerning his ineffective assistance of counsel claims. He asserts that he was entitled to a federal evidentiary hearing because the factfinding process in the state court was not adequate to afford a full and fair hearing, the material facts were not developed in the state proceedings, and he did not receive a full and fair hearing on these claims in the state habeas proceedings. *See* 28 U.S.C.A. § 2254(d)(2)–(3), (6). In support of his position, he points to the following:

(1) He was precluded from deposing or taking formal discovery from trial counsel;

(2) The Commonwealth was not required to pay for having his mental competency evaluated;

(3) He was prohibited from seeking formal discovery from the Roanoke police or the Franklin County Sheriff's Department;

(4) He was prevented from examining trial counsel and members of the Franklin County Sheriff's Department as hostile witnesses;

(5) He was prevented from having an expert witness testify concerning the expert's independent investigation of facts that would have been readily available to trial counsel;

(6) He was precluded from submitting affidavits of the Chief Medical Examiner, Dr. David Oxley, and the Roanoke Fire Marshall, Kenneth Sharp, concerning physical evidence of the crime and the affidavits of Messrs. Wilson and Weeks, to whom his codefendant Reynolds made inculpatory statements regarding Reynolds' role in Bousman's death.

None of the matters to which Correll points, however, deprived him of a full and fair hearing. And, Correll was present at the state habeas hearing, was given a full opportunity to present evidence, and was permitted to call witnesses and examine them through counsel as well as to cross-examine the Commonwealth's witnesses. Thus, this claim lacks merit.[11]

■ Finally, Correll contends that the district court should have considered whether the proportionality review conducted by the Supreme Court of Virginia violated his right to due process; the gist of his claim is that having conferred a liberty or property interest on him by making proportionality review mandatory, the Supreme Court of Virginia must provide proportionality review in a manner that is not arbitrary and capricious, and that it failed to do so. However, the district court properly held this argument procedurally defaulted because it was not raised on direct appeal or in Correll's petition for review of the state habeas court's decision.

## VII.

The district court erred in vacating Correll's convictions and sentences. The record does not support a conclusion that the third confession was obtained in violation of *Edwards* or that it was inadmissible because tainted by earlier involuntary confessions. But, even if it had been inadmissible, relief would not be appropriate because the admission of the confession was at most harmless error. Further, the claims raised by Correll

on cross appeal lack merit. Accordingly, we vacate the judgment of the district court and remand with instructions to reinstate Correll's convictions and sentences.

*VACATED AND REMANDED WITH INSTRUCTIONS.*

---

**11.** Correll also asserts that the district court should not have applied the § 2254(d) presumption because the state habeas court adopted verbatim the Commonwealth's proposed findings of fact. We have recently rejected this argument, however. *Turner,* 35 F.3d at 895 n. 22. When our independent review of the record demonstrates that the findings of the state habeas court are supported by the record, there is no basis for complaint, and our review of the record before the state habeas court reveals that its findings of fact are amply supported.