Rehearing in banc granted by order filed 1/18/96.
Unpublished opinion filed 12/4/95 is vacated.

**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

TIMOTHY SCOTT SHERMAN,
<u>Petitioner-Appellant,</u>

v.

WILLIAM L. SMITH, Warden,

No. 94-6831

Maryland House of Correction-
Annex; JOHN JOSEPH CURRAN,
Attorney General for the State of
Maryland,
<u>Respondents-Appellees.</u>

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
William M. Nickerson, District Judge.
(CA-91-2006)

Argued: September 27, 1995

Decided: December 4, 1995

Before MURNAGHAN and WILKINSON, Circuit Judges, and
BEATY, United States District Judge for the Middle District of
North Carolina, sitting by designation.

_____

Writ granted by unpublished per curiam opinion. Judge Wilkinson
wrote a dissenting opinion.

_____

**COUNSEL**

**ARGUED:** Andrew Lewis Frey, MAYER, BROWN & PLATT,
Washington, D.C., for Appellant. Ann Norman Bosse, Assistant

Attorney General, Criminal Appeals Division, OFFICE OF THE ATTORNEY GENERAL, Baltimore, Maryland, for Appellees. **ON BRIEF:** Roy T. Englert, Jr., James G. Duncan, MAYER, BROWN & PLATT, Washington, D.C.; Stuart J. Robinson, Bel Air, Maryland, for Appellant. J. Joseph Curran, Jr., Attorney General of Maryland, Criminal Appeals Division, OFFICE OF THE ATTORNEY GENERAL, Baltimore, Maryland, for Appellees.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Timothy Sherman, convicted in the Maryland Circuit Court for Harford County for the shotgun murders of his mother and stepfather, sought <u>habeas corpus</u> in the federal district court because of a claimed error which occurred during his trial. A juror, without the trial judge's permission and in contravention of the handbook distributed to jury members at the start of the trial,[1] visited the scene of the crime and particularly, a tree in the branches of which authorities had located the murder weapon. The juror explained to another jury member that he went "so that everything would be clearer in his mind" and because he was dissatisfied with the photographs of the tree.[2] The district court presumed error, but found it harmless trial error and denied the writ.[3]

---

[1] At sentencing, the trial judge acknowledged that "there's no question that [the juror] had violated instructions which were given about not doing his own investigation" but then found the visit did not constitute prejudicial error.

[2] The trial judge had refused Sherman's request for a jury visit to the crime scene. He believed "the issue was fully covered" and consequently, the trip would be a waste of time and resources.

[3] <u>See Sherman v. Smith (Nuth)</u>, 8 F.3d 820 (4th Cir. 1993) (table) (per curiam); <u>Sherman v. Smith (Nuth)</u>, No. 91-2006 (D.Md. July 28, 1994).

2

It appears evident that there was error. Not following a rule that is consistently and uniformly practiced cannot be correct. However, the question remains whether the error was harmless. <u>Brecht v. Abrahamson</u>, 113 S. Ct. 1710, 1722 (1993). Because we have concluded that the error was not harmless, <u>O'Neal v. McAninch</u>, 115 S. Ct. 992, 995 (1995), there is no reason for us to investigate whether it was structural. <u>See Arizona v. Fulminante</u>, 499 U.S. 279, 306-10 (1991) (discussing distinction between structural and trial errors). We need only to give the error significance, even if it is merely trial error.

Our conclusion of non-harmlessness proceeds from the consequences of several circumstances:

1) It denigrates much of our entire judicial system when a juror takes into account factual matters not before the jury as a whole and communicates what he so has learned to other jurors, all in contravention of the jury instructions.[4]

2) The capability of Sherman to place the shotgun amid the branches as it was found was a question in the trial, and an answer to it, for a juror dissatisfied with the photographs of the tree,[5] could be clarified by an actual visual inspection.[6]

3) The juror's description of his erroneous visual viewing may well have affected the factual viewpoints of the other jury members.

_____

[4] The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to a trial by an impartial jury, <u>Stockton v. Virginia</u>, 852 F.2d 740, 743 (4th Cir.), <u>cert. denied</u>, 489 U.S. 1071 (1989), and Due Process requires that a jury verdict be based solely upon evidence developed at trial. <u>Smith v. Phillips</u>, 455 U.S. 209, 217 (1982); <u>Irvin v. Dowd</u>, 366 U.S. 717, 722-23 (1961).

[5] The federal district judge declared that the prosecution's most crucial photograph, a close-up of the pine tree, "does not show me anything on its face."

[6] The attorneys at the sentencing hearing were prohibited from inquiring why the juror searched for the neighborhood and the tree. Yet the evident effect of doing so illuminates the motivation behind his investigation. In addition, the juror testified: "The reason why I went there was so I could see the tree that was so much in question."

3

4) Aside from what the view of the tree would disclose, the other evidence against Sherman was conflicting, particularly since no evidence of gunpowder residue was found on Sherman.**7**

We cannot say, therefore, that the error did not have a "substantial and injurious effect or influence" on the jury's verdict. <u>Brecht</u>, 113 S. Ct. at 1722 (citing <u>Kotteakos v. United States</u>, 328 U.S. 750, 776 (1946));**8** <u>see also O'Neal</u>, 115 S. Ct. at 995. What the juror saw and

_____

**7** <u>United States v. Williams-Davis</u>, 821 F. Supp. 727, 740 (D.D.C. 1993), involved a juror who conducted an unauthorized crime scene visit while on an evening's outing all over Washington, D.C. but testified that the trip failed to affect his ability to render a fair and impartial verdict. The jurors in the instant case have not so testified about a particular scene. The <u>Williams-Davis</u> case is, therefore, distinguishable.

**8** <u>Brecht v. Abrahamson</u> adopted the standard articulated in <u>Kotteakos v. United States</u> as generally applicable for federal habeas review of constitutional error. <u>Brecht</u>, 113 S. Ct. at 1722. In its opinion, the U.S. Supreme Court noted that it was the sixth court to pass on the question before it. The state courts that had considered the matter on direct review had done so using the harmless-error analysis set out in <u>Chapman v. California</u>, 386 U.S. 18, 24 (1967), which requires the prosecution to show "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." The Court concluded that "it scarcely seems logical to require federal habeas courts to engage in the identical approach to harmless-error review that <u>Chapman</u> requires state courts to engage in on direct review." <u>Brecht</u>, 113 S. Ct. at 1721. The <u>Brecht</u> Court refused to assume that state courts would fail to apply the appropriate standard on direct review and explained that state courts "are fully qualified to identify constitutional error and evaluate its prejudicial effect on the trial process under <u>Chapman</u>, and state courts often occupy a superior vantage point from which to evaluate the effect of trial error." <u>Id.</u> The Court determined that requiring federal habeas courts to apply the same standard after state courts have done so might "undermine[ ] the States' interest in finality and infringe[ ] upon their sovereignty over criminal matters." <u>Id.</u>

A large support for <u>Brecht</u>'s holding that federal habeas courts need only determine if the error substantially impacted the jury's verdict, therefore, was the fact that state courts traditionally have applied <u>Chapman</u> in reviewing constitutional errors on direct review. Hence the Court's determination that requiring the federal court to apply the same

what he described to other jurors certainly influenced the jury's verdict. Unlike other cases in which courts have found an error harmless in light of "overwhelming" or clear evidence against the defendant, see, e.g., Correll v. Thompson, 63 F.3d 1279, 1291-92 (4th Cir. 1995), the case against Sherman is less than compelling. The evidence is largely circumstantial. The prosecution presented no eyewitnesses to the killings, no confession by Sherman, nor any evidence of gunpowder residue, tree sap, or pine needles on him. See id. (finding admission of defendant's confession harmless in light of co-defendant testimony, eyewitness accounts, and other testimony that defendant admitted involvement in crime).

Bearing all the considerations which must be taken into account, the error was not harmless. Granting a writ of habeas corpus does not necessarily set Sherman free.[9] If the state of Maryland elects promptly to retry him, a jury, acting properly, may well again convict. It also may not, however, for Sherman, like all criminal defendants, must be proven guilty beyond a reasonable doubt. But a subsequent trial, unlike the trial at issue, presumably would be conducted without harmful error, which is a basic objective of our judicial system.

_____

test when the state court has already done so would be duplicative. In the present case, however, no court--state or federal--has applied the Chapman test, so to require it in the federal habeas corpus case would not be duplicative. See Starr v. Lockhart, 23 F.3d 1280, 1292 (8th Cir.), cert. denied, 115 S. Ct. 499 (1994); Orndorff v. Lockhart, 998 F.2d 1426, 1430 (8th Cir. 1993), cert. denied, 114 S. Ct. 1631 (1994). While the question of which standard a federal habeas court is to apply in such a situation has not been definitively answered by this court, we do not need to confront the question here because the error in this case cannot be deemed harmless under either standard.

[9] Sherman will remain in custody while the state decides whether to retry him. Only if he is not given a new trial within six months will he be released from custody pursuant to this order.

5

Accordingly, the writ is granted, subject to the right of Maryland to retry Sherman on the charges of murder within six months of our adoption of this order.

WRIT GRANTED

WILKINSON, Circuit Judge, dissenting:

I respectfully dissent. It is clear that juror Miller's unauthorized visit to the crime scene constituted trial error, but it is equally clear that the error was harmless under the standard enunciated in Brecht v. Abrahamson, 113 S.Ct. 1710 (1993). See also Smith v. Dixon, 14 F.3d 956, 974-81 (4th Cir. 1994).

The district court, after thoroughly reviewing the evidence presented at trial, correctly concluded that the juror's site visit did not have a "substantial and injurious effect or influence in determining the jury's verdict." Brecht, 113 S.Ct. at 1722 (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)). First, the state offered powerful evidence at trial that Timothy Sherman killed his mother and stepfather. The murder occurred in the middle of the night when Timothy Sherman was home; there was no indication of forced entry, and the house was equipped with an alarm system. The murder weapon was a 12-gauge shotgun that belonged to the Shermans. Police discovered Timothy Sherman's fingerprints on the weapon's trigger mechanism and a box of 12-gauge shotgun shells under his mattress. The box itself contained only three shells, and police located two matching (the box held five) expended shells that experts concluded were fired from the murder weapon. Police found the shotgun lodged in the branches of a large tree, where Timothy Sherman had previously hidden objects and which is located between his own house and that of his grandparents where he ran to report the murder. It is true that there was no sign of gunpowder residue on Timothy Sherman and no pine needles or sap were found on his clothing. But against the powerful array of evidence presented at trial, these facts seem insubstantial.

Second, little prejudice could have resulted from the juror's visit to the crime scene. Juror Miller apparently traveled to the scene in order to see the hiding place for the weapon, even though aerial photo-

6

graphs of and testimony about the tree had been introduced into evidence. When the district court considered the prejudicial effect of the visit, it granted Sherman the benefit of several assumptions: "that Miller examined the tree, told the other jurors that he disagreed with the photographs, and concluded that it was possible for Sherman to hide the gun in the tree in the condition in which it was found." Even under these assumptions, however, the district court found that the error was harmless because substantial evidence demonstrated that Timothy Sherman hid the weapon in the tree. That evidence included photographs showing that Timothy Sherman had an opportunity to hide the weapon in the tree and testimony that he used the tree as a hiding spot and would have been physically able to wedge the gun in the tree. Given this context, the district court appropriately concluded that the juror's site visit "was cumulative of the detailed evidence presented at trial" about the neighborhood where the murder took place and the hiding place for the weapon.

In light of all the evidence presented at trial, Juror Miller's unauthorized excursion to the crime scene was harmless. Brecht, 113 S.Ct. at 1722; Smith, 14 F.3d at 979. I would affirm the judgment of the district court for the reasons set forth in its careful opinion.

7