Filed:  October 16, 1997

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

_____

No. 97-4
(CA-95-837-3)

_____

Thomas H. Beavers, Jr.,

Petitioner - Appellant,

versus

Samuel V. Pruett, etc.,

Respondent - Appellee.

_____

O R D E R

_____

The Court amends its opinion filed September 23, 1997, as follows:

On page 5, first full paragraph of continuation of footnote 4, line 13 -- the phrase "those alleged facts" is corrected to read "those alleged <u>events</u>."

For the Court - By Direction

/s/ Patricia S. Connor
_____
Clerk

UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

THOMAS H. BEAVERS, JR.,
Petitioner-Appellant,

v.

SAMUEL V. PRUETT, Warden,
Mecklenburg Correctional Center,
Respondent-Appellee.

No. 97-4

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
James R. Spencer, District Judge.
(CA-95-837-3)

Argued: July 10, 1997

Decided: September 23, 1997

Before WILKINS, LUTTIG, and WILLIAMS, Circuit Judges.

_____

Dismissed by unpublished opinion. Judge Wilkins wrote the opinion,
in which Judge Luttig and Judge Williams joined.

_____

**COUNSEL**

**ARGUED:** Mark Evan Olive, Tallahassee, Florida, for Appellant.
Katherine P. Baldwin, Assistant Attorney General, OFFICE OF THE
ATTORNEY GENERAL, Richmond, Virginia, for Appellee. **ON
BRIEF:** Michele J. Brace, VIRGINIA CAPITAL REPRESENTA-
TION RESOURCE CENTER, INC., Richmond, Virginia, for Appel-
lant. James S. Gilmore, III, Attorney General of Virginia, OFFICE

OF THE ATTORNEY GENERAL, Richmond, Virginia, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

WILKINS, Circuit Judge:

Thomas H. Beavers, Jr. appeals an order of the district court dismissing his petition for a writ of habeas corpus,**1** which challenged his Virginia conviction for capital murder and resulting death sentence. See 28 U.S.C.A. § 2254 (West 1994).**2** We conclude that the district

---

**1** Beavers named J. D. Netherland, former Warden of the Mecklenburg Correctional Center where Beavers is incarcerated, as Respondent in his petition. Subsequently, Samuel V. Pruett succeeded Netherland as Warden at that institution. For ease of reference, we refer to Respondent as "the Commonwealth" throughout this opinion.

**2** Because Beavers' petition for a writ of habeas corpus was filed on October 11, 1995, prior to the April 24, 1996 enactment of the Antiterrorism and Effective Death Penalty Act (AEDPA) of 1996, Pub. L. No. 104-132, 110 Stat. 1214, amendments to chapter 153 of Title 28 effected by the AEDPA do not govern our resolution of this appeal. See Lindh v. Murphy, 117 S. Ct. 2059, 2067 (1997). We have not yet decided whether the provisions contained in § 107 of the AEDPA apply to Beavers, who filed his state habeas petition on April 18, 1994. See Bennett v. Angelone, 92 F.3d 1336, 1342 (4th Cir.) (declining to decide whether the procedures established by the Commonwealth for the appointment, compensation, and payment of reasonable litigation expenses of competent counsel satisfy the statutory opt-in requirements of § 107, which would render those provisions applicable to indigent Virginia prisoners seeking federal habeas relief from capital sentences if an initial state habeas petition was filed after July 1, 1992), cert. denied, 117 S. Ct. 503 (1996). However, we need not address this issue because we conclude that habeas relief is inappropriate under the more lenient standards in effect prior to the recent amendments. See O'Dell v. Netherland, 95 F.3d 1214, 1255 n.36 (4th Cir. 1996) (en banc), aff'd, 117 S. Ct. 1969 (1997).

court correctly held that Beavers was not entitled to habeas relief. Accordingly, we deny Beavers' application for a certificate of probable cause to appeal and dismiss this appeal.

I.

On the night of May 1, 1990, Beavers broke into the home of Marguerite Lowery, a 60-year-old widow, and murdered her by suffocating her with a pillow while raping her. Beavers subsequently was convicted of capital murder and sentenced to death on the basis that he posed "a continuing serious threat to society."[3] Va. Code Ann. § 19.2-264.2 (Michie 1995). The Supreme Court of Virginia affirmed on direct appeal, and the United States Supreme Court denied certiorari. See Beavers v. Commonwealth, 427 S.E.2d 411 (Va.), cert. denied, 510 U.S. 859 (1993). Thereafter, a state habeas court denied Beavers postconviction relief without conducting an evidentiary hearing, reasoning that Beavers' allegations of constitutionally ineffective assistance of counsel lacked merit and that his remaining claims were barred by Hawks v. Cox, 175 S.E.2d 271, 274 (Va. 1970) (precluding, absent changed circumstances, consideration in state habeas proceedings of claims considered on their merits during direct review), or were defaulted under Slayton v. Parrigan, 205 S.E.2d 680, 682 (Va. 1974) (holding that issues not properly raised on direct appeal will not be considered on state collateral postconviction review). The Supreme Court of Virginia denied review.

Beavers then filed this action raising a plethora of issues. Without conducting an evidentiary hearing, the district court denied habeas relief and dismissed his petition. With respect to those issues that Beavers presses on appeal, the district court held federal habeas review to be foreclosed as to four of them because they were procedurally defaulted. Beavers' defaulted claims are as follows: (1) his appointed mental health expert was constitutionally ineffective in violation of the Eighth and Fourteenth Amendments; (2) the refusal of the state trial court to permit one of his trial attorneys to withdraw from representation violated the Sixth, Eighth, and Fourteenth

_____

[3] Beavers was also convicted of rape, grand larceny, and arson, and was sentenced separately on these counts to life, ten years, and eight years respectively.

3

Amendments; (3) the refusal of the state trial court to remove for cause a prospective juror who stated during voir dire that she would impose the death penalty if the jury returned a capital conviction violated the Eighth and Fourteenth Amendments; and (4) the failure of the state trial court to guide adequately the discretion of the jurors in considering the mitigating evidence violated the Sixth, Eighth, and Fourteenth Amendments. The district court ruled that the three remaining claims that Beavers presents--that (1) trial counsel was constitutionally ineffective under the Sixth Amendment with respect to the handling of issues relating to Beavers' mental health and in the investigation and presentation of mitigating evidence; (2) the trial court violated the Eighth and Fourteenth Amendments by refusing to grant a mistrial; and (3) the trial court denied Beavers protections guaranteed by the Eighth and Fourteenth Amendments by refusing during voir dire to question prospective jurors concerning whether they would automatically impose the death penalty--lacked merit.

## II.

Absent cause and prejudice or a miscarriage of justice, a federal habeas court may not review constitutional claims when a state court has declined to consider their merits on the basis of an adequate and independent state procedural rule. See Harris v. Reed, 489 U.S. 255, 262 (1989). The Supreme Court of Virginia expressly relied on the procedural default rule set forth in Slayton in refusing to consider Beavers' claims that his court-appointed mental health expert was constitutionally ineffective; that the trial court erred in refusing to permit one of his attorneys to withdraw; that the trial court erred in qualifying a juror who stated that she would impose the death penalty if the jury returned a capital murder conviction; and that the instructions failed to guide adequately the discretion of the jury in considering the mitigating evidence. Thus, we may not consider these claims on their merits,**4** see Smith v. Murray, 477 U.S. 527, 533 (1986); Bennett v.

_____

**4** Beavers maintains that his claim relating to the adequacy of the instructions to guide the discretion of the jury in considering the mitigating evidence is not procedurally defaulted. He asserts that he raised that claim in his petition for appeal to the Supreme Court of Virginia from the denial of state postconviction relief. The referenced portion of the petition states:

4

Angelone, 92 F.3d 1336, 1343 (4th Cir.), cert. denied, 117 S. Ct. 503 (1996), unless Beavers can demonstrate that cause and prejudice exist to excuse the default or that the failure of the court to consider the claim would amount to a fundamental miscarriage of justice, see Coleman v. Thompson, 501 U.S. 722, 750 (1991).

_____

> Trial counsel failed to request any mitigating instructions at the sentencing phase of Beavers' capital murder trial.... Trial counsel's failure to request, and the trial court's failure to give, these instructions prejudiced Beavers because the jury may have imposed the death penalty on an improper, inadequate or arbitrary basis.

Appellant's Pet. for Appeal at 52, Beavers v. Netherland, No. 950146 (Va. Apr. 24, 1995). And, he contends, the Supreme Court of Virginia denied relief on this claim on the basis that the ineffective assistance claims raised were without merit.

The claim Beavers presented to the Supreme Court of Virginia, however, was one of ineffective assistance of counsel. The petition omitted reference to any other constitutional right to additional instruction concerning the mitigating evidence and failed to provide any argument concerning why the referenced instructions were constitutionally required. Thus, Beavers failed to properly exhaust this claim. See Duncan v. Henry, 513 U.S. 364, 366 (1995) (per curiam); Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997) (explaining that in order for federal claim to be exhausted, the substance of the federal right must be presented to the highest state court), petition for cert. filed, ___ U.S.L.W. ___ (U.S. May 27, 1997) (No. 96-9163); Mallory v. Smith , 27 F.3d 991, 994 (4th Cir. 1994) (noting that exhaustion requires that petitioner do more than apprise state court of the facts; he must "explain how those alleged events establish a violation of his constitutional rights"); id. at 995 (explaining that exhaustion requires "more than scatter[ing] some makeshift needles in the haystack of the state court record" (internal quotation marks omitted)). Because presentation to the state court at this juncture would be fruitless, the claim is properly considered to be procedurally barred. See George v. Angelone, 100 F.3d 353, 363 (4th Cir. 1996) ("A claim that has not been presented to the highest state court nevertheless may be treated as exhausted if it is clear that the claim would be procedurally defaulted under state law if the petitioner attempted to raise it at this juncture."), cert. denied, 117 S. Ct. 854 (1997). Therefore, we hold this claim to be procedurally defaulted.

5

Beavers does not assert that cause and prejudice exist to excuse the default. See Teague v. Lane, 489 U.S. 288, 298 (1989) (possible cause and prejudice not considered when petitioner fails to argue that any exist); Correll v. Thompson, 63 F.3d 1279, 1288 (4th Cir. 1995) (same), cert. denied, 116 S. Ct. 688 (1996). But, he maintains that the failure to consider his claims would amount to a miscarriage of justice because the evidence he proffered to the district court concerning his organic brain disorder and brain tumor demonstrate his actual innocence.

It is undisputed, however, that Beavers actually murdered Lowery, and the additional evidence to which Beavers points does not demonstrate that he was not criminally responsible for his conduct. Thus, Beavers has not demonstrated that a constitutional error probably resulted in the conviction of one who is actually factually innocent. See Schlup v. Delo, 513 U.S. 298, 323-27 (1995). Further, Beavers has not presented "`clear and convincing evidence that but for a constitutional error, no reasonable juror would have found the petitioner eligible for the death penalty,'" and thus he has not demonstrated that he is "`actually innocent of the death penalty.'" Id. at 323 (emphasis omitted) (quoting Sawyer v. Whitley, 505 U.S. 333, 336 (1992)). Consequently, Beavers has not established a fundamental miscarriage of justice to excuse his default of these claims.

III.

The first of Beavers' undefaulted claims is his argument that his trial counsel was constitutionally ineffective. In order to be entitled to relief on this claim, Beavers bears the burden of demonstrating that his attorneys' "representation fell below an objective standard of reasonableness" and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Strickland v. Washington, 466 U.S. 668, 688, 694 (1984). In assessing counsels' performance, we bear in mind that our review is "highly deferential." Id. at 689. Indeed, we afford a strong presumption that counsel's performance was within the extremely wide range of professionally competent assistance. See id. And, to eliminate the deceptive effects of hindsight on our consideration, we look to "the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's

6

conduct." Id. at 690. Moreover, even those instances in which counsel's conduct fell below an objective standard of reasonableness generally will not justify setting aside a conviction unless the error affected the outcome of the proceeding. See id. at 691-92. Therefore, deficiencies in Beavers' attorneys' conduct would warrant reversal only if he convinces us that in the absence of unprofessional errors by his attorneys there is a reasonable probability--i.e., one adequate to undermine our confidence in the result--that "the result of the proceeding would have been different." See id. at 694. We review de novo Beavers' claim that counsel was ineffective. See id. at 698.

Beavers maintains that the performance of his trial counsel fell below an objective standard of reasonableness in two areas--the handling of issues relating to Beavers' mental health and the investigation and presentation of mitigating evidence. More specifically, Beavers asserts that counsel failed: (1) to communicate effectively with his mental health expert; (2) to ensure that he obtained a psychiatric evaluation on an in-patient basis; (3) to obtain a full social and clinical history for use by his court-appointed mental health expert; and (4) to present the testimony of mitigation witnesses during the sentencing phase of trial, including family and friends who could have testified about Beavers' upbringing by a schizophrenic mother.

With respect to counsel's handling of the mental health issues, Beavers maintains that the district court erred in denying this claim based on our repeated admonitions that counsel is not obligated to "shop around" to find an expert that will provide a different or better expert opinion. Poyner v. Murray, 964 F.2d 1404, 1419 (4th Cir. 1992); Roach v. Martin, 757 F.2d 1463, 1477 (4th Cir. 1985). Beavers contends that this is not the basis for his claim and that his argument, instead, "is that he was entitled to one, competently arrived at, opinion, which he did not receive." Initial Brief of Appellant at 48. This argument, however, only serves to highlight the deficiency in Beavers' position.

Attorneys need not be mental health experts or medical doctors, and they are not held to a standard of competence requiring them to be. See Pruett v. Thompson, 996 F.2d 1560, 1574 (4th Cir. 1993). Pursuant to defense counsel's request that Beavers be examined by a mental health expert, Dr. Henry O. Gwaltney, Jr., a forensic clinical

7

psychologist, was appointed. Dr. Gwaltney's subsequent opinion provided Beavers' attorneys with little support for an insanity defense or evidence in mitigation. Beavers does not assert that counsel was informed by Dr. Gwaltney or others that more information concerning Beavers' social and medical history, further testing, or additional expert assistance was required in order for Dr. Gwaltney to properly evaluate Beavers. And, Dr. Gwaltney's opinion was consistent with that of two psychiatrists who had evaluated Beavers to determine his mental state at the time of the murder. In short, Beavers' attorneys did not perform unprofessionally in relying on his court-appointed mental health expert. See Jones v. Murray, 947 F.2d 1106, 1112-13 (4th Cir. 1991) (rejecting argument that counsel was ineffective for relying on the psychological assessment of Dr. Gwaltney).

With regard to Beavers' claim that counsel should have engaged in further investigation to discover additional mitigating evidence from his past, we again conclude that counsel's performance was not professionally deficient. Beavers does not dispute that trial counsel contacted a number of Beavers' family members, including his wife, his mother and father, and his uncle in an effort to obtain mitigating background evidence. Nor does he dispute that it was the professional judgment of his attorneys that the testimony of these witnesses potentially would have been more damaging than beneficial because of aggravating information they possessed that counsel did not wish to risk disclosing. Beavers does not attack this strategic decision on the part of counsel, but rather proffers affidavits from family members, neighbors, and former coworkers who indicate that Beavers' mother was schizophrenic and that her bizarre conduct had an extremely adverse effect on her child-rearing skills and that, as a result, Beavers was subjected to a very difficult and abusive childhood.

Although "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary," Strickland, 466 U.S. at 691, counsel is not constitutionally required to interview every family member, neighbor, and coworker in the search for constitutionally mitigating evidence. Because Beavers' trial counsel conducted a reasonable investigation for mitigating evidence with Beavers' closest family members and found nothing that, in the professional judgment of the attorneys,

8

could be employed in Beavers' defense, we conclude that counsel did not perform unprofessionally in failing to investigate further.

Moreover, even if Beavers had overcome the presumption that counsel's performance was within the broad range of professionally acceptable conduct, we are not convinced that he would have satisfied the prejudice prong of Strickland. The mental health evidence that Beavers argues would have been obtained if counsel had performed competently does not undermine our confidence in the verdict at the guilt phase of his trial. And, although "evidence of a defendant's mental impairment may diminish his blameworthiness for his crime," it also may "indicate[ ] that there is a probability that he will be dangerous in the future." Barnes v. Thompson, 58 F.3d 971, 980-81 (4th Cir. 1995) (internal quotation marks omitted). Thus, this evidence is a two-edged sword, and "the sentencing authority could well have found in the mitigating evidence of mental illness or history of abuse, sufficient evidence to support a finding of future dangerousness." Id. at 981. In sum, Beavers was not deprived of constitutionally adequate assistance of counsel.**5**

IV.

Beavers next contends that the state trial court violated the Eighth and Fourteenth Amendments by refusing to grant a mistrial after it struck a witness' testimony. During Beavers' trial, a state law enforcement officer, Deputy Lam, testified. At the beginning of his testimony, the Commonwealth presented him with a document to refresh his memory. Beavers objected to Deputy Lam reading from the document in answering two questions and sought a mistrial. Deputy Lam then testified that Beavers had told him that "`he had no

---

**5** Beavers also argues that he was entitled to an evidentiary hearing in district court to develop the facts underlying his ineffective assistance of counsel claim and his ineffective assistance of court-appointed mental health expert claim. We review a decision of a district court denying an evidentiary hearing for an abuse of discretion. See Pruett, 996 F.2d at 1577. We conclude that the district court did not abuse its discretion because Beavers did not demonstrate that the additional facts he alleges, if true, would entitle him to relief. See, e.g., Beaver v. Thompson, 93 F.3d 1186, 1190 (4th Cir.), cert. denied, 117 S. Ct. 553 (1996).

other choice but to do what he had done because [Mrs. Lowery] could identify him.'" Beavers, 427 S.E.2d at 419 (alteration in original). Deputy Lam subsequently equivocated regarding the accuracy of his memory of portions of the statement, and when Beavers once again objected, the trial court sustained the objection and ordered the jury to disregard the officer's testimony in its entirety. On direct appeal, the Supreme Court of Virginia held that the trial court had not erred in refusing to grant a mistrial rather than give a cautionary instruction. See id. Beavers now asserts that the instruction given by the trial court was insufficient to cure the prejudice caused by Deputy Lam's statement and that the failure of the trial court to grant a mistrial created an impermissible risk that Beavers' conviction and sentence were the product of passion, prejudice, and arbitrary factors.

We disagree. Even if we were to conclude that Beavers is correct that the failure to grant a mistrial under these circumstances was an error of constitutional dimension, relief would not be appropriate. Beavers points to no clearly established rule of constitutional law in existence in October 1993, when his conviction became final, that would have compelled a state court to reverse his conviction; hence this argument is barred by the new rule doctrine set forth in Teague v. Lane, 489 U.S. 288 (1989). See O'Dell v. Netherland, 117 S. Ct. 1969, 1973 (1997). Accordingly, this argument does not provide a basis for relief.

V.

Finally, Beavers contends that the state trial court deprived him of the guarantees of the Eighth and Fourteenth Amendments by refusing to ask prospective jurors during voir dire, "Do you believe that if one is convicted of taking another's life, the proper penalty is loss of your own life?" Initial Brief of Appellant at 59. Again, we disagree.

"[T]he requirement of impartiality embodied in the Due Process Clause of the Fourteenth Amendment," prohibits "[a] juror who will automatically vote for the death penalty in every case" from sitting on a capital jury. Morgan v. Illinois, 504 U.S. 719, 729 (1992). A corollary of the right to an impartial jury is the requirement of a voir dire sufficient to permit identification of unqualified jurors because without an adequate voir dire, a trial judge will not be able to remove

10

unqualified jurors and the defendant will not be able to exercise challenges for cause. See id. at 729-30. Thus, a capital defendant must be allowed on voir dire to ascertain whether prospective jurors are unalterably in favor of the death penalty in every case, regardless of the circumstances, rendering them unable to perform their duties in accordance with the law. See id. at 735-36. Questions directed simply to whether a juror can be fair, or follow the law, are insufficient. See id. at 734-36.

Although it declined to ask Beavers' proposed question, the state trial judge asked prospective jurors, "`[I]f the jury should convict the defendant of capital murder, would you be able to consider voting for a sentence less than death?'" Beavers, 427 S.E.2d at 418. This question is adequate to identify those who would automatically vote for the death penalty. Thus, Beavers' argument lacks merit.

VI.

In sum, we conclude that Beavers procedurally defaulted his claims that (1) his appointed mental health expert was constitutionally ineffective in violation of the Eighth and Fourteenth Amendments; (2) the refusal of the state trial court to permit one of his trial attorneys to withdraw from representation violated the Sixth, Eighth, and Fourteenth Amendments; (3) the refusal of the state trial court to remove for cause a prospective juror who stated during voir dire that she would impose the death penalty if the jury returned a capital conviction violated the Eighth and Fourteenth Amendments; and (4) the state trial court failed to guide adequately the discretion of the jurors in considering the mitigating evidence in violation of the Sixth, Eighth, and Fourteenth Amendments. And, Beavers' remaining claims lack merit.

Prior to the decision of the Supreme Court in Lindh v. Murphy, 117 S. Ct. 2059 (1997), Beavers sought a certificate of appealability in this court pursuant to 28 U.S.C.A. § 2253(c)(1) (West Supp. 1997) (providing in pertinent part that "[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from ... the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court"). Following the Lindh decision, see Lindh, 117 S. Ct.

11

at 2067 (concluding that generally the amendments to chapter 153 of Title 28 do not apply to petitions, like Beavers', filed prior to the effective date of the AEDPA), Beavers sought a certificate of probable cause to appeal from the district court. The district court denied the certificate, reasoning that Beavers had not made a substantial showing of denial of a constitutional right. Beavers subsequently petitioned this court for a certificate of probable cause to appeal.

We need not decide whether, strictly speaking, Beavers was correct in seeking a certificate of appealability under amended § 2253 or a certificate of probable cause to appeal because he has failed to make the substantial showing of the denial of a constitutional right necessary for the grant of either. See Lozada v. Deeds, 498 U.S. 430, 431-32 (1991) (per curiam) (explaining that to warrant the grant of a certificate of probable cause to appeal, a habeas petitioner must "make a substantial showing of the denial of [a] federal right" and that to satisfy this showing, the petitioner "must demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further" (internal quotation marks & emphasis omitted; alterations in original)); Murphy v. Netherland, 116 F.3d 97, 101 (4th Cir. 1997) (denying certificate of appealability under § 2253 in habeas corpus action seeking relief from death sentence where petitioner failed to make a substantial showing of the denial of a constitutional right). Accordingly, we dismiss Beavers' appeal.

DISMISSED

12