**Michael Eugene CANNADY,**
**Petitioner–Appellant,**

v.

**Richard L. DUGGER, Secretary, Department of Corrections; Attorney General, State of Florida, Respondents–Appellees.**

**No. 89–3812.**

United States Court of Appeals,
Eleventh Circuit.

May 16, 1991.

Donald Scott Modesitt, Tallahassee, Fla., for petitioner-appellant.

Cynthia A. Shaw and Edward C. Hill, Asst. Attys. Gen., Tallahassee, Fla., for respondents-appellees.

Before TJOFLAT, Chief Judge, DUBINA, Circuit Judge, and HENDERSON, Senior Circuit Judge.

DUBINA, Circuit Judge:

The appellant, Michael Eugene Cannady ("Cannady"), is currently serving a life sentence with a mandatory minimum term of imprisonment of 25 years. Cannady was convicted of first degree murder, robbery, and kidnapping in the Circuit Court for Bay County, Florida. He appeals the district court's judgment denying his petition for writ of habeas corpus in which he raised four grounds for relief: (1) judicial misconduct; (2) prosecutorial misconduct; (3) ineffective assistance of counsel; and (4) illegally obtained confession. For the reasons which follow, we reverse the district court and remand for a grant of the writ.

## I. BACKGROUND

Cannady was convicted of the first degree murder of William Carrier, the night auditor at the Ramada Inn in Panama City, Florida ("the victim"). The only substantial evidence against Cannady regarding the murder consisted of incriminating statements he made to Officer Frank McKeithen ("McKeithen"), an investigator with the Bay County Sheriff's office. Can-

nady told McKeithen that he stole some money from the Ramada Inn, kidnapped the victim, drove him to a secluded wooded area and shot him. The jury reached a guilty verdict but recommended a life sentence.

Judge Russell Bower adjudged Cannady guilty of murder in the first degree; however, Judge Bower rejected the jury's recommendation and sentenced Cannady to death. Cannady filed a timely notice of appeal to the Florida Supreme Court, which affirmed Cannady's conviction but reduced his court-imposed death penalty sentence to life imprisonment with a mandatory minimum term of incarceration of 25 years. Subsequently, Cannady filed a Rule 3.850 motion in the Circuit Court for Bay County addressing four main issues: (1) judicial misconduct; (2) prosecutorial misconduct; (3) ineffective assistance of counsel; and (4) illegally obtained confession. Judge Bower denied the Rule 3.850 motion, and Cannady appealed to the District Court of Appeal, First District of Florida, which affirmed per curiam. Cannady then filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the United States District Court for the Northern District of Florida. The United States Magistrate Judge entered a Report and Recommendation recommending that all relief be denied. Cannady filed a timely objection to the magistrate judge's recommendation which was overruled by the district court. The district court entered judgment in favor of the respondents and against Cannady. It is from that judgment that Cannady appeals.

## II. DISCUSSION

■ The first issue we consider on appeal is whether Cannady's confession that he killed the victim was illegally obtained. Cannady argues that the confession should not have been admitted into evidence because it was not freely and voluntarily given, and he did not knowingly waive his right to have an attorney present when he made incriminating statements to McKeithen. This court, however, in deciding the

ultimate issue of voluntariness of a defendant's confession, may substitute its independent judgment after a review of the entire record. *Sullivan v. Alabama,* 666 F.2d 478 (11th Cir.1982).

Cannady became a suspect in the murder while he was incarcerated on other charges. McKeithen read Cannady his *Miranda*[1] rights and questioned him several times about the murder. At one of the initial interviews, Cannady presented an alibi defense. McKeithen investigated the alibi and discovered its inaccuracy. Then McKeithen confronted Cannady that he had been seen in Panama City on the night before the murder. McKeithen asked Cannady if he killed the victim, and Cannady, at some point during the interview said, "I think I should call my lawyer." Continuing the questioning, McKeithen asked Cannady if he wanted "to talk about it," whereupon Cannady broke down and admitted the killing. After this outburst, McKeithen interrogated Cannady in detail about the murder. Cannady then read and signed a written waiver of rights form and gave a transcribed confession.

There is conflicting testimony in the record by McKeithen as to whether the voluntary admission was made before or after Cannady requested counsel. McKeithen testified at his deposition and at trial that Cannady first stated, "I think I should call my lawyer," and then he broke down and stated, "I didn't mean to kill that man ... it wasn't supposed to happened that way." At the suppression hearing, McKeithen testified that Cannady first stated, "I didn't mean to kill that man ... it wasn't supposed to happen that way," and then stated he needed to speak to his attorney. Whether the spontaneous statements were made before or after Cannady

requested an attorney is immaterial since the statements were not made in response to interrogation. *See Miranda,* 384 U.S. at 467–479, 86 S.Ct. at 1624–1630.

▮▮▮ Cannady's outburst in which he stated that "he didn't mean to kill that man" is not due to be suppressed. Voluntary and spontaneous comments by an accused, even after *Miranda* rights are asserted, are admissible evidence if the comments were not made in response to government questioning. *See Lightbourne v. Dugger,* 829 F.2d 1012, 1019 (11th Cir. 1987), *cert. denied,* 488 U.S. 934, 109 S.Ct. 329, 102 L.Ed.2d 346 (1988); *United States v. Suggs,* 755 F.2d 1538, 1542 (11th Cir. 1985). Cannady's initial statement was not the product of interrogation. It was spontaneously and voluntarily made by Cannady during questioning by McKeithen as to his whereabouts on the night of the murder. At oral argument before this court, Cannady's counsel alluded to the fact that these statements were voluntarily made.[2]

▮▮▮ The statements which followed Cannady's request for counsel are a different matter. We conclude that all subsequent statements should have been suppressed because they were obtained in violation of Cannady's fifth amendment right. In *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), the Supreme Court held that the use of the petitioner's confession against him at trial violated his right under the fifth and fourteenth amendments to have counsel present during custodial interrogation when the petitioner had previously requested an attorney. When an accused has invoked his right to have counsel present during custodial interrogation, a valid waiv-

---

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. At oral argument, Modesitt, counsel for Cannady, stated: "Well, he [Cannady] said, 'It wasn't supposed to happen that way ... I didn't mean to kill that man.' Now, I don't think this is a confession ... I think it's an incriminating statement, but I'd rather go back to trial with that one than the next two that occurred after that." Cannady's counsel at oral argument also stated: "If the Court finds that it was a volun-

tary statement when the defendant said, 'I think I ought to talk to a lawyer' and then he volunteers and says, 'Well, I didn't mean to kill that man ... it wasn't supposed to happen that way.' If the court finds that to be voluntary and admissible, I may agree that might be appropriate. But the following statements after that were the product of interrogation by the officer; they were [there was] no effort to clarify whether he wanted an attorney or not and there was no need for clarification...."

er of that right cannot be established by showing only that he responded to police-initiated interrogation after being again advised of his rights. *Edwards,* 451 U.S. at 484–87, 101 S.Ct. at 1884–86. According to *Edwards,* once an accused requests an attorney, all questioning and interrogation must cease until the attorney is present.

■ If the request for counsel is equivocal (for example, a request to have both counsel and talk), further inquiries by the police must be limited to clarifying the initial request for counsel. No statement made after the request and before it is clarified may overcome the *Miranda* bar. *Thomas v. Wainwright,* 601 F.2d 768, 771 (5th Cir.1979). *See also United States v. Pena,* 897 F.2d 1075 (11th Cir.1990). Cannady's statement, "I think I should call my lawyer," was an unequivocal request for counsel. McKeithen knew Cannady wanted to speak to an attorney because McKeithen pushed the phone toward Cannady and waited for him to make the call. When Cannady did not call an attorney, McKeithen then asked, "would you like to talk about it?" This statement is not a clarifying one. It is a question directly about the murder and any answer elicited from Cannady after this statement is a violation of Cannady's constitutional rights. *See Owens v. Alabama,* 849 F.2d 536, 539 (11th Cir.1988). In *Owens,* this court held that continued questions about a murder violated *Miranda* rights when the accused had stated that he thought he would let the state appoint him counsel. Here, McKeithen's question to Cannady was obviously whether Cannady wanted to talk about the crime, not whether Cannady wanted an attorney. McKeithen knew that Cannady wanted an attorney, and he should have procured an attorney for him.

Because we hold that Cannady's petition for writ of habeas corpus is due to be granted on the basis that his confession was illegally obtained, we need not address the remaining issues presented in this appeal.

In conclusion, we reverse the district court's denial of Cannady's petition for writ of habeas corpus and remand this case to the district court with directions to grant the writ and afford the state an opportunity to retry Cannady.

REVERSED AND REMANDED WITH DIRECTIONS.