[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
02/10/99
THOMAS K. KAHN
CLERK

No. 96-9034

D. C. Docket No. 1:95-CR-513-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

FELIX ESPINOZA GAMBOA,
FREDERICK HEALEY,
LUIS MIGUEL BRIONES-MURO,
CRUZ ESTRADA MARTINEZ,

Defendants-Appellants.

Appeals from the United States District Court
for the Northern District of Georgia

(February 10, 1999)

Before TJOFLAT and BARKETT, Circuit Judges, and PROPST*, Senior District Judge.

TJOFLAT, Circuit Judge:

---

*Honorable Robert B. Propst, Senior U.S. District Judge for the Northern District of Alabama, sitting by designation.

Felix Espinoza Gamboa, Frederick Healey, Luis Miguel Briones-Muro, and Cruz Estrada

Martinez challenge their convictions and sentences for conspiracy to possess with the intent to distribute methamphetamine, as well as several related substantive counts. Finding their claims of error meritless, we affirm.

I.

On September 11, 1995, undercover DEA agent James Warner and a confidential informant went to appellant Healey's residence in Conley, Georgia, to purchase one pound of methamphetamine. After they entered the residence, Healey introduced them to appellants Gamboa and Briones-Muro. Warner gave Healey the money for the drugs; Healey, in turn, gave the money to Gamboa, who produced a plastic bag containing 445.2 grams of methamphetamine. Warner took the bag and left the residence. Outside, he spoke briefly to Gamboa and Briones-Muro before they entered a silver and red pick-up truck and drove away. DEA agents surveilling the premises followed the truck to a residence located at 317 Heathrow Drive in Riverdale, Georgia, owned by Gamboa's brother.

On October 5, Warner, the confidential informant, and another undercover DEA agent went to Healey's residence to purchase more methamphetamine. Gamboa, Briones-Muro, and appellant Martinez arrived there around the same time in the silver and red pick-up truck. Healey, who had been waiting for them, walked to the truck and obtained a package wrapped in duct tape from Gamboa. Then, with the exception of Martinez (who stayed in the truck), everyone entered Healey's residence. Once inside, Healey and Warner exchanged the package and money. The package contained 438 grams of methamphetamine.

Warner and Healey thereafter arranged for a third methamphetamine transaction to take

2

place on October 20 at 3:00 p.m. at the Riverdale Holiday Inn. Earlier that day, law enforcement officers conducting a surveillance of the house at 317 Heathrow Drive saw Gamboa, Briones-Muro, and Martinez enter and leave the house several times. The silver and red pick-up truck was parked in front of the house. At 2:15 p.m., Martinez walked to the truck and leaned in toward the console area. At 3:31 p.m., Gamboa, Briones-Muro, and Martinez left the house and walked to the truck. Gamboa climbed into the driver's seat and Briones-Muro, standing outside the truck, twice handed objects to him. Briones-Muro and Martinez then got into the truck and all three drove toward the Holiday Inn.

Within a half-mile of the inn, police officers stopped the truck and arrested the three occupants. One of the officers noted that three of the screws holding the truck's console in place were missing and the fourth was barely screwed in. Upon removing the console, the officer discovered 1252 grams of methamphetamine. Later that day, police officers searched the residence at 317 Heathrow Drive and confiscated two rolls of duct tape, triple beam scales, plastic baggies, 442 grams of marijuana, and several firearms.

All four appellants were charged with conspiring to possess with intent to distribute methamphetamine between September 11 and October 20, 1995, in violation of 21 U.S.C. § 846, and with committing the substantive offense of possession with intent to distribute on October 20, in violation of 21 U.S.C. § 841 and 18 U.S.C. § 2. Healey, Gamboa, and Briones-Muro also were charged with committing the same substantive offense on September 11 and on October 5.

The defendants were tried together. During the second day of trial, the Government dismissed the substantive charges against Gamboa and Briones-Muro, and offered the defendants a plea bargain: the Government would dismiss the remaining charges against each of the

defendants if <u>all</u> of them would plead guilty to use of a communication facility in committing a drug trafficking offense. The Government made it clear that its offer would be withdrawn if any of the defendants rejected it.

The district court instructed counsel for the parties that if the defendants were going to accept the Government's offer, they had to tender their acceptances and guilty pleas by 9:00 a.m. the next day or the court would not consider them. So that defense counsel could have time to confer with their clients, the court arranged for the Spanish interpreter (who had been attending the trial) to remain in the courthouse after the court recessed for the day. By the end of the evening, three of the defendants had decided to accept the Government's offer; Martinez remained undecided. His attorney therefore arranged to continue his discussion with Martinez early the next morning; the attorney also arranged for the interpreter to be present, because Martinez did not speak English.

When Martinez and his attorney arrived at the courthouse the next day, however, the interpreter was not there; he was stuck in traffic. As a result, Martinez and his attorney were unable to confer. The interpreter eventually arrived, however, and, after consulting counsel, Martinez agreed to join his co-defendants and accept the Government's plea offer. But he made his decision too late. By the time counsel were able to inform the court that the defendants were prepared to tender pleas of guilty, it was 9:40 a.m., forty minutes past the court's deadline. Adhering strictly to the 9 a.m. deadline, the court refused to accept the proposed plea bargain, and the trial promptly resumed. The jury subsequently found the defendants guilty as charged.

II.

4

Appellants contend that the district court abused its discretion when it rejected the plea bargains the Government had offered to them. As a remedy, they ask us to set aside their convictions and to remand the case to the district court with the instruction that it accept their pleas to a charge of using a communication facility in committing a drug trafficking offense.

The district court provided three reasons for its refusal to accept the tendered plea agreements. First, Healey's plea (which carried a maximum sentence of four years) did not adequately reflect the seriousness of the offenses he had committed. Consequently, under Sentencing Guidelines section 6B1.2(a),[1] Healey's plea was unacceptable. Second, the facts would not support a finding by the court that Gamboa, Briones-Muro, and Martinez had used a communication facility to facilitate a drug trafficking offense. Third, the pleas were tendered after the 9:00 a.m. deadline. The court set the deadline so that the guilty pleas, if they were to be tendered, could be taken before the jury reported for duty. By taking the pleas before the jury reported, the court could conserve the jurors' time and avoid unnecessary disruption of the court's trial docket.

We find no abuse of discretion here.[2] Sentencing Guidelines section 6B1.2(a) states that a court may accept a plea agreement "if the court determines . . . that the remaining charges adequately reflect the seriousness of the actual offense behavior." See also United States v. Bean, 564 F.2d 700, 704 (5th Cir. 1977) ("A decision that a plea bargain will result in the

---

[1] Because the Government's offer to the defendants was to be withdrawn unless all of the defendants tendered pleas of guilty, and their pleas were accepted, the court's rejection of Healey's plea meant that the offer was withdrawn.

[2] Abuse of discretion is the proper standard for reviewing a court's decision to reject a guilty plea. See United States v. Gomez-Gomez, 822 F.2d 1008, 1010 (11th Cir. 1987).

5

defendant's receiving too light a sentence under the circumstances of the case is a sound reason for a judge's refusing to accept the agreement.").[3] In this case, Healey was charged with one count of conspiracy to possess with intent to distribute methamphetamine and with three substantive counts – charges that carried a minimum statutory penalty of twenty years imprisonment per count. If Healey had been allowed to plead guilty to use of a communication facility in committing a drug offense, however, he would have been subject to a maximum of four years incarceration. Furthermore, there was a substantial quantity of drugs involved in Healey's crime – a total of 2134 grams of methamphetamine and 442 grams of marijuana. It was therefore well within the district court's discretion to hold that the negotiated guilty plea did not reflect the seriousness of Healey's offense behavior.

We further conclude that it was not an abuse of discretion to reject the guilty pleas because they were tendered after the court-imposed deadline. We have held that the prerogative of prosecutors and defendants to negotiate guilty pleas is "outweighed by judicial discretion to control the scheduling of trial procedures in ongoing prosecutions, plus the broad interests of docket control and effective utilization of jurors and witnesses." United States v. Ellis, 547 F.2d 863, 868 (5th Cir. 1977). Thus, courts may reject guilty pleas that are tendered after a deadline set by the court. See id.

The district court in this case concluded that the 9:00 a.m. deadline was necessary to prevent the needless waste of the jury's time and for effective management of its docket. In setting this deadline, the court provided sufficient opportunity for the defendants to discuss the

---

[3] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

6

Government's offer with their attorneys; it arranged for the defendants, their attorneys, and the interpreter to stay after the court recessed for the day in order to reach a decision. Three of the defendants, in fact, decided to accept the Government's offer before the deadline expired. The court did not abuse its discretion by rejecting the guilty pleas when the fourth defendant failed to meet the deadline.[4]

III.

Martinez challenges the sufficiency of the evidence supporting his convictions. In order to convict Martinez of possession with the intent to distribute methamphetamine, the Government had to establish three elements: "(1) knowledge; (2) possession; and (3) intent to distribute." United States v. Hernandez, 896 F.2d 513, 520 (11th Cir. 1990) (citations omitted). Constructive possession is sufficient to satisfy the possession element, and is proven "by showing ownership or dominion and control over the drugs or over the premises on which the drugs are concealed." Id. (citations omitted). In order to convict Martinez of the conspiracy charge, the Government was required to prove that he agreed with one or more persons to violate the narcotics laws. See United States v. Toler, 144 F.3d 1423, 1426 (11th Cir. 1998). We review

---

[4] The court also rejected the guilty pleas because it believed that there was an inadequate factual basis for Gamboa, Briones-Muro, and Martinez to plead guilty to use of a communication facility in committing a drug offense. A court cannot accept a guilty plea unless it is satisfied that the conduct to which the defendant admits constitutes the offense charged. See McCarthy v. United States, 394 U.S. 459, 467, 89 S. Ct. 1166, 1171, 22 L. Ed. 2d 418 (1969). Because the district court refused to entertain the proposed guilty pleas, however, the record does not reveal what, if anything, the Government would have offered as a factual basis for the pleas. Because the court had other sound bases for rejecting the tendered pleas, as explained above, we need not address the question whether the court was correct in concluding that the tendered pleas lacked a factual basis.

the sufficiency of the evidence <u>de novo</u>, drawing all reasonable inferences in the Government's favor. <u>See</u> <u>id.</u> at 1428.

Martinez contends that the evidence was insufficient to convict him of either the conspiracy or the possession charge. According to Martinez, the evidence did nothing more than establish his mere presence on the scene – specifically, his presence in the pick-up truck – on October 5 and October 20; hence, it did not prove that he agreed to participate in the conspiracy or that he had control of the drugs. Because mere presence at the crime scene is insufficient to prove guilt beyond a reasonable doubt, <u>see</u> <u>Hernandez</u>, 896 F.2d at 518, Martinez asserts that his convictions should be reversed.

We are not persuaded. Although mere presence is inadequate to establish guilt, we have held that "it is material, highly probative, and not to be discounted." <u>United States v. Freeman</u>, 660 F.2d 1030, 1035 n.1 (5th Cir. Unit B Nov. 1981).[5] The evidence showed that Martinez drove (in the pick-up truck) with Gamboa and Briones-Muro to the scene of the October 5 transaction, and that he was riding (in the same truck) with Gamboa and Briones-Muro – with the drugs – to the scene of the Holiday Inn transaction on October 20, after spending most of the day at the Heathrow Drive residence where triple beam scales, firearms, marijuana, and other drug paraphernalia were found. This evidence gave "rise to a permissible inference of participation in the conspiracy." <u>United States v. Calderon</u>, 127 F.3d 1314, 1326 (11th Cir. 1997).

A small, but significant, piece of evidence buttresses this conclusion. On October 20, before Martinez, Gamboa, and Briones-Muro left the Heathrow Drive residence in the pick-up

---

[5] In <u>Stein v. Reynolds Securities, Inc.</u>, 667 F.2d 33 (11th Cir. 1982), this court adopted as binding precedent all decisions of Unit B of the former Fifth Circuit handed down after September 30, 1981.

truck for the Holiday Inn, Martinez walked from the house to the truck and leaned in toward the truck's console – the place where the drugs were stored and were discovered by the police after they stopped the vehicle. This evidence suggests that Martinez took an active role in concealing the drugs before they were driven to the October 20 rendevous.

In addition to the foregoing, the jury had before it evidence, introduced under Federal Rule of Evidence 404(b), that Martinez had been part of another drug trafficking conspiracy and had been arrested in 1994 for selling drugs on several occasions to an undercover police officer.[6] This evidence suggested both that Martinez had the intent to possess and distribute the methamphetamine on October 20 and that he had the intent to conspire with the other defendants as alleged in the indictment.

In sum, we conclude that a reasonable jury could find both that Martinez possessed the methamphetamine with the intent to distribute it on October 20 and that he agreed with Gamboa, Briones-Muro, and Healey to participate in the alleged drug trafficking conspiracy.[7]

---

[6] The arrest led to a formal charge against Martinez in state court. He failed to appear for trial, and was a fugitive at the time of his arrest in the instant case on October 20, 1995.

[7] Appellants raise a number of challenges to their convictions and sentences not mentioned above. They contend that their convictions should be set aside on the following grounds: (1) comments made by a juror during jury selection unduly prejudiced their case; (2) the court erred in refusing to ask the venire persons certain questions regarding identification; (3) the court abused its discretion both in refusing to grant appellants a continuance and in admitting or excluding certain evidence; (4) the court erred in denying a motion for mistrial after a witness gave perjured testimony; (5) the prosecutor's remarks in final summation before the jury were improper and unduly prejudicial; and (6) with respect to the appellants Healey, Gamboa, and Briones-Muro (and Martinez, as indicated in the text) the evidence was insufficient to convict. Appellants also attack their sentences on the grounds that the court sentenced them for trafficking D-methamphetamine rather than L-methamphetamine. Martinez, in addition, questions the court's attribution to him of 1452 grams of methamphetamine and its failure to depart downward from the Guidelines sentencing range. We find each of these claims of error meritless.

IV.

For the foregoing reasons, the district court's judgment is AFFIRMED.