[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEB 24, 2009
THOMAS K. KAHN
CLERK

_____

No. 08-10198
Non-Argument Calendar

_____

D. C. Docket No. 07-20708-CR-PCH

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

BOBBY SANDERS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(February 24, 2009)**

Before TJOFLAT, DUBINA and ANDERSON, Circuit Judges.

PER CURIAM:

Bobby Sanders appeals his convictions and 264-month sentences for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and possession with the intent to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C). On appeal, Sanders argues that the district court erred by denying his motion to suppress evidence obtained during a search of his residence, including a firearm and cocaine base, and any statements made before he was given the warnings under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602 (1966). He asserts that his arrest was made without probable cause and that his statements made following the arrest should have been suppressed as a byproduct of his illegal detention. He suggests that the search of his residence was conducted in violation of the Fourth Amendment because the officers did not have probable cause, and they did not have valid consent.

Ordinarily, "[r]eview of a district court's denial of a motion to suppress is a mixed question of law and fact." United States v. Delancy, 502 F.3d 1297, 1304 (11th Cir. 2007). Accordingly, we accept the district court's factual findings as true unless clearly erroneous, and review the district court's interpretation and application of the law de novo. Id. Additionally, "all facts are construed in the light most favorable to the prevailing party." United States v. Bervaldi, 226 F.3d 1256, 1262 (11th Cir. 2000). Arguments that are not raised before the district

court are reviewed for plain error. United States v. Ward, 486 F.3d 1212, 1221 (11th Cir.), cert. denied, 128 S.Ct. 398 (2007). Under plain error review, there must be "(1) error, (2) that is plain, and (3) that affects substantial rights." Id. "The admission of statements obtained in violation of Miranda is subject to harmless error scrutiny." United States v. Arbolaez, 450 F.3d 1283, 1292 (11th Cir. 2006).

In general, unless there is consent, police officers must obtain a warrant supported by probable cause to justify a search under the Fourth Amendment. United States v. Magluta, 418 F.3d 1166, 1182 (11th Cir. 2005). A search of property without a warrant and probable cause is constitutionally permissible if preceded by valid consent. United States v. Dunkley, 911 F.2d 522, 525 (11th Cir. 1990). A third party may give valid consent to search if he or she has "common authority over or other sufficient relationship to the premises or effects sought to be inspected." United States v. Matlock, 415 U.S. 164, 171, 94 S.Ct. 988, 993 (1974). Common authority is not implied from the mere property interest a third party has in the property, "but rests rather on mutual use of the property by persons generally having joint access or control for most purposes." Id. at 172 n.7, 94 S.Ct. at 993 n.7.

"[W]here a consent to search follows prior illegal activity by the police," we "must determine whether the consent was voluntary" and "whether the consent, even if voluntary, requires exclusion of the evidence found during the search because it was the 'fruit of the poisonous tree.'" Delancy, 502 F.3d at 1308. "The second requirement focuses on causation: 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'" Id. (quoting Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963)). "Th[e] two-step approach is mandatory, and the government bears the burden on both issues." Id. We may conduct the Wong Sun analysis for the first time on appeal if the factual record is adequate. Id. at 1309.

"A consensual search is constitutional if it is voluntary; if it is the product of an essentially free and unconstrained choice." United States v. Purcell, 236 F.3d 1274, 1281 (11th Cir. 2001) (quotation omitted). Voluntariness is a factual assessment and "depends on the totality of the circumstances." Id. In evaluating voluntariness, we examine several factors, "including the presence of coercive police procedures, the extent of the defendant's cooperation with the officer, the defendant's awareness of his right to refuse consent, the defendant's education and

intelligence, and the defendant's belief that no incriminating evidence will be found." Id.

Three non-exhaustive factors are considered in determining whether a defendant's consent was tainted by his illegal arrest: (1) "the temporal proximity of the seizure and the consent"; (2) "the presence of intervening circumstances"; and, most importantly, (3) "the purpose and flagrancy of the official misconduct." See Delancy, 502 F.3d at 1309. "[The] factor-based analysis [cannot] obscure the underlying question, which generally involves a pragmatic evaluation of the extent to which the illegal police conduct caused the defendant's response." Id. at 1310 (quotation omitted).

Under Miranda, "evidence obtained as a result of a custodial interrogation is inadmissible unless the defendant had first been warned of his rights and knowingly waived those rights." United States v. Parr, 716 F.2d 796, 817 (11th Cir. 1983). "Miranda safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent." Rhode Island v. Innis, 446 U.S. 291, 300-01, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297 (1980). Officers engage in the "functional equivalent" of express questioning when they use "any words or actions . . . (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an

5

incriminating response from the suspect." Id. at 309 n.5, 100 S.Ct. at 1694 n.5. In determining "whether the police practice was so coercive that it was likely to evoke an incriminating response," we must "focus[] primarily upon the perceptions of the suspect, rather than the intent of the police." United States v. Stubbs, 944 F.2d 828, 832 (11th Cir. 1991) (emphasis omitted). "Voluntary and spontaneous comments by an accused . . . are admissible evidence if the comments were not made in response to government questioning." Cannady v. Dugger, 931 F.2d 752, 754 (11th Cir. 1991) (habeas case).

Sanders argues, for the first time on appeal, that the officers lacked probable cause for his arrest and that the evidence obtained as a result of the unlawful arrest should have been suppressed. Because he did not contend that his arrest was unlawful before the district court, his argument is reviewed for plain error. See Ward, 486 F.3d at 1221. However, the record does not clearly show when the officers placed Sanders in custody. Thus, it is unclear whether the officers had probable cause when they placed Sanders under arrest. See United States v. Goddard, 312 F.3d 1360, 1362 (11th Cir. 2002) (noting that "the Fourth Amendment permits warrantless arrests in public places where an officer has probable cause to believe that a felony has occurred"). Nevertheless, this Court need not decide the legality of the arrest because even assuming that the arrest

6

violated the Fourth Amendment, the evidence found during the search was admissible as the result of a voluntary consent. See Delancy, 502 F.3d at 1307.

Overstreet gave her consent to the search knowingly and voluntarily. There is no dispute that Overstreet had common authority over or other sufficient relationship to the residence. The officers were not armed when they approached Overstreet, did not make any threats or coercion, and did not notice anything unusual about her appearance. Further, Overstreet affirmed that she was not under the influence of alcohol, drugs, or medication, that she had a college-level education, and that she did not have any mental problems. While Sanders refused to sign the consent form, he gave verbal consent to the search and did not object to Overstreet's consent, and there was no evidence that he was threatened or coerced by the officers. Thus, this situation was not similar to Georgia v. Randolph, 547 U.S. 103, 122-23, 126 S.Ct. 1515, 1528 (2006) (holding that a tenant cannot consent over a co-tenant's express objection). See Delancy, 502 F.3d at 1308 n.7. Based on the above facts, the district court did not err in finding that Overstreet's consent was knowing and voluntary and that the officers had valid consent to search the residence. See Purcell, 236 F.3d at 1281.

As to the statement made by Sanders claiming ownership of the cocaine base, the firearm, and the ammunition, the government does not dispute that

Sanders was in custody at the time he made the incriminating statement and that the officers had not read Sanders his Miranda warnings. The record, however, demonstrates that Villa Verde directed the question to Overstreet, rather than Sanders. Therefore, the district court's finding that his statement was voluntary and spontaneous was not clearly erroneous.

Even if the district court erred in admitting the statement because the question was the "functional equivalent" of a custodial interrogation, any error was harmless because Sanders later completed a Miranda waiver form and reasserted that he owned the seized items. In signing the Miranda waiver form, Sanders indicated that he was not under the influence of drugs or medication, that he had a high-school education, that he did not have any mental illness, that he understood that he could answer "yes" or "no" to the waiver questions, that he waived his right to a lawyer, and that he signed the form under his own free will, without any threats or promises. Because the record does not show that the officers engaged in a "two-step technique" designed "to obscure the Miranda warnings," Sanders's waiver was knowing and voluntary. See United States v. Gonzalez-Lauzan, 437 F.3d 1128, 1137-38 (11th Cir. 2006) (holding that a defendant knowingly and voluntarily waived his Miranda rights where the officers did not ask any pre-Miranda questions of the defendant, the defendant did not

offer pre-Miranda any detailed information concerning his involvement in the crime, the officers did not engage in any threats or coercion, the defendant understood his Miranda rights, and there was no hostility between the parties). Thus, Sanders's post-Miranda statement that he owned the seized items was admissible, and any error by the district court in admitting the pre-Miranda statement was harmless.

Sanders also argues that the district court erred by denying his motion for judgment of acquittal because the evidence was insufficient to support his convictions. He asserts that no evidence connected him to the residence and that other individuals were present during the search. He concludes that his mere presence at the scene, without more, was insufficient to reach a guilty verdict.

We review de novo a district court's denial of judgment of acquittal on sufficiency of evidence grounds. United States v. Yates, 438 F.3d 1307, 1311-12 (11th Cir. 2006) (en banc). The evidence is viewed in the light most favorable to the government, with all reasonable inferences and credibility choices made in the government's favor. United States v. Garcia, 405 F.3d 1260, 1269 (11th Cir. 2005). We must affirm unless the jury could not have found, under any reasonable construction of the evidence, the defendant guilty beyond a reasonable doubt. Id.

9

To support a conviction under 18 U.S.C. § 922(g)(1), the government must establish that: "(1) [the defendant] knowingly possessed a firearm or ammunition, (2) he or she was previously convicted of an offense punishable by a term of imprisonment exceeding one year, and (3) the firearm or ammunition was in or affecting interstate commerce." United States v. Palma, 511 F.3d 1311, 1315 (11th Cir.), cert. denied, 129 S.Ct. 215 (2008). "[Section] 922(g) is a strict liability offense that does not require the prosecution to prove that the criminal acts were done with specific criminal intent." Id. (internal quotation omitted). "The government need not prove actual possession in order to fulfill the 'knowing' requirement of § 922(g)(1)." United States v. Wright, 392 F.3d 1269, 1273 (11th Cir. 2004). Instead, "it may be shown through constructive possession." Id. Constructive possession may be shown through evidence "that the defendant exercised ownership, dominion, or control over the firearm or the [premises] concealing the firearm." United States v. Gunn, 369 F.3d 1229, 1234 (11th Cir. 2004). To convict a person of possession with intent to distribute a controlled substance under 21 U.S.C. § 841(a)(1), the government must prove three elements: "(1) knowledge; (2) possession; and (3) intent to distribute." United States v. Gamboa, 166 F.3d 1327, 1331 (11th Cir. 1999). "Constructive possession is sufficient to satisfy the possession element, and is proven by showing ownership

10

or dominion and control over the drugs or over the premises on which the drugs are concealed." Id. (quotation omitted).

The district court did not err in denying Sanders's motion for judgment of acquittal because a reasonable trier of fact could have found that he knowingly possessed the firearm and that he knowingly possessed the cocaine base with intent to distribute. According to the evidence presented at trial, Castro found the shotgun underneath the bed of the master bedroom. When confronted with the seized weapon, Sanders admitted that he owned the firearm, needed the shotgun for protection, and kept it underneath the bed. Based on this evidence, a reasonable juror could conclude that Sanders knowingly possessed the firearm and was guilty beyond a reasonable doubt.

As to Count 2, the parties stipulated that the officers found a bag containing 3.1 grams of cocaine base in the residence. Sanders acknowledges that the officers discovered this amount of cocaine base during the search. Thus, there is no merit to his contention that the officers "added" or used the drugs seized from his earlier arrest to obtain his conviction for possession with intent to distribute. According to the evidence at trial, Castro found a bag containing suspect cocaine base and numerous Ziplock baggies in the night stand of the master bedroom. When confronted with the seized cocaine base and baggies, Sanders admitted that

11

he owned the items, and he stated that he sold and used narcotics in order to provide for everyone in the house. Further, Villa Verde testified that the markings and symbols on the Ziplock baggies indicated that they were used in the distribution of narcotics. Based on this evidence, a reasonable juror could conclude that Sanders knowingly possessed the cocaine base with intent to distribute and was guilty beyond a reasonable doubt.

Sanders argues that the district court erred by enhancing his sentence under the Armed Career Criminal Act (ACCA) because his prior burglary convictions did not qualify as violent offenses under 18 U.S.C. § 924(e)(2)(B). He asserts that his conduct was consistent with auto theft, rather than generic burglary as defined by Taylor v. United States, 495 U.S. 597, 110 S.Ct. 2143 (1990). He also submits that his robbery conviction did not qualify as a violent offense under the ACCA.

We review de novo whether a particular offense constitutes a violent felony under the ACCA. United States v. Rainey, 362 F.3d 733, 734 (11th Cir. 2004). Harmless error is applied to sentencing cases, and remand is unnecessary if the party defending the sentence persuades us that the district court would have imposed the same sentence absent the erroneous factor. See United States v. Williams, 503 U.S. 193, 202-03, 112 S.Ct. 1112, 1120-21 (1992).

12

"Section 4B1.4(a) of the Guidelines provides that [a] defendant who is subject to an enhanced sentence under the provisions of 18 U.S.C. § 924(e) is an armed career criminal." United States v. Wade, 458 F.3d 1273, 1276 (11th Cir. 2006) (quotation omitted). "Application of that statutory provision, the [ACCA], requires a finding that the defendant who has violated [18 U.S.C.] § 922(g) has three previous convictions for a violent felony or serious drug offense." Id. The ACCA defines violent felony as any crime that "has as an element the use, attempted use, or threatened use of physical force against the person of another" or "is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. §§ 924(e)(2)(B)(i)-(ii). "This matters to the calculation of a guidelines sentence . . . because § 4B1.4(a) of the [G]uidelines effectively incorporates by reference the definition of 'violent felony' from § 924(e)(2)(B), and § 4B1.4(b) of the [G]uidelines provides for a higher offense level for armed career offenders." Wade, 458 F.3d at 1277.

"Generally, in determining whether a prior conviction is a qualifying offense for enhancement purposes, we apply a 'categorical' approach–that is, we look no further than the fact of conviction and the statutory definition of the prior offense." United States v. Llanos-Agostadero, 486 F.3d 1194, 1196-97 (11th

13

Cir. 2007), cert. denied, __ S.Ct. __ (U.S. Jan. 12, 2009).  However, where the judgment of conviction and the statute are ambiguous, the district court may look to the facts underlying the state conviction to determine whether it qualifies as a violent felony under the ACCA.  Id. at 1197.  In doing so, the district court is generally limited to "relying only on the charging document[s], written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented."  Id. (quotation omitted).

A person commits burglary within the meaning of § 924(e) "if he is convicted of any crime, regardless of its exact definition or label, having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime."  Taylor, 495 U.S. at 599, 110 S.Ct. at 2158.  Florida defined the crime of burglary at the time of Sanders's conviction as follows:  "'Burglary' means entering or remaining in a structure or a conveyance with the intent to commit an offense therein, unless the premises are at the time open to the public or the defendant is licensed or invited to enter or remain."  Fla. Stat. § 810.02(1) (1987).  Attempted burglary of a curtilage under Fla. Stat. § 810.02 presents a serious potential risk of physical injury to another under the ACCA's residual clause.  United States v. Matthews, 466 F.3d 1271, 1275 (11th Cir. 2006).  Florida defined the crime of robbery at the time

14

of Sanders's convictions as follows: "'Robbery' means the taking of money or other property which may be the subject of larceny from the person or custody of another by force, violence, assault, or putting in fear." Fla. Stat. § 812.13(1) (1980).

The district court did not err in sentencing Sanders as an armed career criminal because three of his prior convictions qualified as violent felonies under the ACCA. Sanders was convicted of burglary of a structure or conveyance in 1987. Because it is unclear from the judgment of conviction whether Sanders burgled a structure or conveyance, it is necessary to examine the underlying facts of the conviction. See Llanos-Agostadero, 486 F.3d at 1196-97. According to the arrest affidavit, the burglary related to the entry of a structure or building, rather than a conveyance. Therefore, Sanders's conviction fell within the Taylor definition of a burglary because he entered or remained in a structure or a building without permission, when the premises were not open to the public, with the intent to commit an offense. See Matthews, 466 F.3d at 1274.

Additionally, Sanders had two prior robbery convictions in 1980. Because robbery under Florida law required the state to prove that Sanders took money or other property of another "by force, violence, assault, or putting in fear," the convictions fell within the meaning of violent felony under the ACCA because

15

they included "as an element the use, attempted use, or threatened use of physical force against the person of another." See Fla. Stat. § 812.13(1); 18 U.S.C. § 924(e)(2)(B)(i). Because Sanders was convicted of at least three prior violent felonies within the meaning of the ACCA, he qualified as an armed career criminal, and the district court did not err by enhancing his sentence under U.S.S.G. § 4B1.4.

Finally, Sanders argues that the district court erred by enhancing his sentences under U.S.S.G. § 2K2.1(b)(6) because the evidence did not show that he used the firearm during a drug offense, that he had access to it during a drug transaction, or that it was brandished in any way during any offense. He claims that the enhancement also runs afoul with United States v. Booker, 543 U.S. 220, 125 S.Ct. 738 (2005), because it enhanced his sentences without submission of the facts to the jury.

Ordinarily, we review a Booker claim on appeal de novo and will reverse only for harmful error. United States v. Paz, 405 F.3d 946, 948 (11th Cir. 2005). However, where a defendant raises a Booker objection for the first time on appeal, we review for plain error. See United States v. Rodriguez, 398 F.3d 1291, 1299(11th Cir. 2005). Booker held that, pursuant to the mandatory Sentencing Guidelines, the Sixth Amendment was violated when a sentence was enhanced

16

based solely on judicial fact-finding, and the Sentencing Guidelines were advisory only. Booker, 543 U.S. at 233-35, 259-60, 125 S.Ct. at 749-51, 764. Thereafter, we have recognized two types of Booker errors: (1) a Sixth Amendment constitutional error of enhancing a defendant's sentence using judge-found facts under a mandatory guideline system; and (2) a statutory error of applying the advisory guidelines as mandatory. United States v. Shelton, 400 F.3d 1325, 1330-31 (11th Cir. 2005). The use of extra-verdict enhancements in an advisory guidelines scheme, however, is not unconstitutional. United States v. Rodriguez, 398 F.3d 1291, 1300 (11th Cir. 2005). A district court may determine enhancements based on a preponderance of the evidence standard as long as the Guidelines are applied in an advisory fashion. United States v. Chau, 426 F.3d 1318, 1323-24 (11th Cir. 2005).

The district court did not err in applying the four-level enhancement under U.S.S.G. § 2K2.1(b)(6) because it applied the Guidelines in an advisory fashion. Moreover, the enhancement had no effect on the district court's application of the Guidelines because Sanders's offense level was adjusted to 34, pursuant to § 4B1.4(b)(3)(A), since he was an armed career criminal. Thus, even if the district court erred in applying the four-level enhancement under § 2K2.1(b)(6), any error was harmless.

**AFFIRMED.**[1]

---

[1] Sanders' request for oral argument is denied.