[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 09-13262
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 6, 2010
JOHN LEY
CLERK

D. C. Docket No. 08-00042-CR-FTM-29SPC

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CARLOS YOUNG,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(May 6, 2010)

Before EDMONDSON, BIRCH and FAY, Circuit Judges.

PER CURIAM:

Carlos Young appeals the district court's denial of his motion to suppress incriminating statements he made to a police officer regarding cocaine located in the trunk of a vehicle. Young argues that his statements were inadmissible because (1) he made his initial statement when he was in custody and subject to the functional equivalent of interrogation, but before he had been informed of his *Miranda v. Arizona*, 384 U.S. 436, 478-79, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694 (1966), rights; and (2) his statements were coerced. For the reasons set forth below, we affirm.

## I.

Young pled not guilty to conspiracy to possess with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(ii)(11), and 846, ("Count 1"); and possession with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(ii)(11), ("Count 2").

Prior to trial, Young filed a motion to suppress incriminating statements he made to officers during his arrest. He argued that admitting the statements would violate *Miranda* because he was not advised of his *Miranda* rights, was sprayed with an aerosol subject restraint ("ASR"), and was placed under arrest before he made the statements. Young also contended that his statements were coerced because the arresting officer failed to render first aid, even though Young

2

complained of pain and loss of breath after being sprayed with ASR.

The government responded that, although Young was in custody at the time he made the incriminating statements, he was not subject to interrogation. It contended that Young's statements were made spontaneously, and that the arresting officer did not intend to elicit the statement from Young.

At the evidentiary hearing, Florida Highway Patrol Trooper Adam Heinlein testified that, on March 11, 2008, he conducted a traffic stop on a red Hyundai with four occupants. During the stop, Young, a passenger in the vehicle, was hostile, cursing, and giving Heinlein a hard time. While Heinlein was standing next to the passenger side of the vehicle, he smelled an odor of marijuana coming from inside the vehicle. Heinlein called for backup because of Young's attitude.

While Heinlein was issuing a speeding citation to the driver of the vehicle, Trooper Michael Merrit and Officer Todd Harris arrived on scene. Officer Harris's K-9 alerted to the presence of drugs in the suspects' vehicle. Heinlein and Merrit instructed the occupants to sit in the rear of a patrol car, but Young refused. The officers advised Young that, if he refused to comply, he would be placed under arrest. Young stated that, he would not get into the car, and Heinlein advised Young that he was being placed under arrest. Heinlein ordered Young to put his hands behind his back, but Young began to struggle with Heinlein and Merrit.

3

During the struggle, Merrit deployed his ASR, which Heinlein described as "mace," into Young's face. Heinlein noted that "[e]verybody got sprayed" and Heinlein could not see. The other three occupants attempted to enter their vehicle. Merrit disengaged from Young and ordered the occupants to stay away from the vehicle. Heinlein eventually secured Young and placed him into the rear seat of his patrol car. Heinlein then saw Merrit chasing the three other occupants in the median area of the interstate. The three suspects were eventually apprehended. When Heinlein was sure that the three individuals were secure, he returned to his patrol car.

Heinlein retrieved his medical bag from the trunk of his patrol car to render first-aid to Young. He rolled down the back windows of his patrol car, and, while he was retrieving his medical bag, Young told Heinlein that he could not breathe. Young then stated, "Help me, help me. You can have everything in the trunk. There's one and a half kilos of cocaine in there. I'm done fighting with you, just help me, just wipe off my face." Heinlein retrieved his medical bag, wiped off Young's face with an alcohol swab, fanned Young's face with a blanket, and opened the partition in his vehicle to allow the air conditioner to blow in Young's face. Heinlein then read Young his *Miranda* rights. In response, Young stated that he had approximately one and a half kilograms of cocaine in the trunk. Young

4

indicated to Heinlein that he had been trying to sell the cocaine, but was unable to do so. Heinlein eventually closed the partition to the patrol car and performed an interior search of the suspects' vehicle. In the trunk, Heinlein located a shoe box containing 17 separate bags of cocaine.

According to Heinlein, Young was sitting in the patrol car for "maybe two minutes, at the most" before Heinlein returned and rendered first aid. Heinlein stated that, after Young asked him for help, he told Young "just hold on a second, I'm going to get the bag and stuff like that out of the car." He told Young several times that the pain would go away shortly and that he was going to administer first aid. Heinlein noted that he also had been sprayed with ASR and was coughing and trying to get the ASR out of his eyes. Heinlein acknowledged that DVD footage of the traffic stop showed him walking up to the Hyundai and taking the keys out of the ignition immediately after putting Young in the patrol car. He explained that he was securing the vehicle.

Young testified that he never resisted the officers and never made any statements about the cocaine in the trunk of the car. He stated that Heinlein never advised him of his *Miranda* rights. Young testified that he had to ask Heinlein six or seven times to help him because his face was burning and he could not breathe.

The magistrate issued a report and recommendation ("R&R"), finding that

Heinlein's testimony was more credible than Young's. The magistrate determined that, although Young was in custody at the time he made his incriminating statements, he was not being interrogated, and, therefore, *Miranda* warnings were not required. The magistrate also found that Young's statements did not result from the use of force or coercion, and it recommended denying Young's motion to suppress.

Young filed objections to the R&R, arguing that Heinlein's testimony was incredible and his statements regarding the cocaine were made under duress.

The district court found that Heinlein's testimony was credible and that Young's statements were not coerced or obtained in violation of *Miranda*.

Prior to trial, the government moved to dismiss Count 1 of the indictment. A jury found Young guilty of Count 2, possession with intent to distribute 500 grams of cocaine. The court sentenced Young to 87 months' imprisonment, followed by 4 years of supervised release.

## II.

We review a district court's denial of a defendant's motion to suppress under a mixed standard of review, reviewing the district court's findings of fact under the clearly erroneous standard and its application of law to those facts *de novo*. *United States v. Gil*, 204 F.3d 1347, 1350 (11th Cir. 2000). "Credibility determinations

6

are typically the province of the fact finder," and we defer to a district court's determinations regarding witness credibility unless the district court's understanding of the facts appears to be unbelievable. *United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002). The facts must be construed in the light most favorable to the party that prevailed in the district court. *United States v. Santa*, 236 F.3d 662, 668 (11th Cir. 2000).

As an initial matter, Young's evidentiary hearing testimony differed significantly from Heinlein's testimony. The district court found that Heinlein's testimony regarding these events was more credible than Young's. Because Heinlein's testimony does not appear to be unbelievable on its face, and because we must construe the facts in the light most favorable to the government, we accept Heinlein's testimony as credible. *See Ramirez-Chilel*, 289 F.3d at 749; *Santa*, 236 F.3d at 668.

### III.

*Compliance With Miranda*

To comport with the Fifth Amendment's prohibition against compelled self-incrimination, a person taken into custody must be advised of his right to remain silent and his right to counsel prior to an interrogation. *Miranda*, 384 U.S. at 478-79, 86 S.Ct. at 1630. However, *Miranda* only applies where "a person in

7

custody is subjected to either express questioning or its functional equivalent." *Rhode Island v. Innis*, 446 U.S. 291, 300-01, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297 (1980). The "functional equivalent" of interrogation refers "to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Id.* at 301-03, 100 S.Ct. at 1689-91 (holding that officers could not have known that their conversation between themselves was reasonably likely to elicit an incriminating statement). This inquiry "focuses primarily upon the perceptions of the suspect, rather than the intent of the police." *Id.* at 301, 100 S.Ct. at 1690. "Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by [the holding in *Miranda*]." *Miranda*, 384 U.S. at 478, 86 S.Ct. at 1630; *Cannady v. Dugger*, 931 F.2d 752, 754 (11th Cir. 1991) ("[v]oluntary and spontaneous comments by an accused . . . are admissible evidence if the comments were not made in response to government questioning").

It is clear that Young was in custody at the time he made his first incriminating statement regarding the cocaine because he was handcuffed and secured in Heinlein's police cruiser. Young concedes that he was not subject to express questioning when he made the incriminating statements. Thus, the

8

relevant inquiry for purposes of *Miranda* is whether Young was subject to the "functional equivalent" of questioning when he made the incriminating statements. *See Innis*, 446 U.S. at 300-01, 100 S.Ct. at 1689.

Heinlein's testimony establishes that Young was not subjected to the functional equivalent of interrogation at the time that he made the incriminating statement. The initial use of the ASR, which Young contends was an "unusual degree of force," was not intended to elicit incriminating statements from Young. Instead, it was intended to subdue Young, who refused to comply with the officers' commands to sit in the police cruiser. *See United States v. Glen-Archila*, 677 F.2d 809, 815 (11th Cir. 1982) (holding that, even if the circumstances of an arrest are inherently coercive, the defendant must show a link between the coercion and his statements to establish that he was subjected to the functional equivalent of interrogation). In fact, Young did not make his incriminating statements immediately after being sprayed with the ASR. Furthermore, the reason for the use of the ASR should have been clear to Young because it was Young who refused to comply with the officer's orders. *Innis*, 446 U.S. at 301, 100 S.Ct. at 1690 (instructing courts to focus on the defendant's perception of officers' actions).

Placing Young into the patrol car with the windows rolled up also did not amount to the "functional equivalent" of interrogation. In fact, Heinlein would not

have been able to hear any statements that Young made at this time because he was not near the police cruiser and the windows were closed. Furthermore, upon returning to the cruiser, Heinlein rolled down the windows and told Young that he would help him. He then retrieved his medical bag and gloves. These actions would have the adverse effect of eliciting an incriminating response, as they should have reassured Young that Heinlein was preparing to help him and that a confession was not necessary to obtain medical help. Nothing in the record suggests that Heinlein should have known that the brief delay in providing medical care was reasonably likely to elicit an incriminating statement from Young. *See Innis*, 446 U.S. at 301, 100 S.Ct. at 1689-90. Thus, Heinlein's testimony establishes that Young's statements did not result from the "functional equivalent" of interrogation but, instead, were made voluntarily and spontaneously and, therefore, were admissible even in the absence of *Miranda* warnings. *See Miranda*, 384 U.S. at 478, 86 S.Ct. at 1630; *Cannady*, 931 F.2d at 754.

### *Voluntariness*

"[A] confession is deemed involuntary if the [speaker's] will was overborne in such a way to render his confession the product of coercion." *Land v. Allen*, 573 F.3d 1211, 1216 (11th Cir. 2009) (quotation omitted). In analyzing the voluntariness of a confession, we consider the totality of the circumstances

10

surrounding the confession. *United States v. Rouco*, 765 F.2d 983, 993 (11th Cir. 1985).

Although Heinlein handcuffed Young and placed him in the police cruiser with ASR on his face, he remained there for only two to three minutes before Heinlein began rendering first aid. The delay was caused by the flight of Young's codefendants, as well as Young's previous resistance, which forced Heinlein to secure Young, secure the suspect vehicle, and ensure that the codefendants were apprehended before tending to Young. Because the purpose of the delay was to secure the scene rather than obtain a confession from Young, these actions did not render Young's subsequent statements involuntary. *See Rouco*, 765 F.2d at 993 (holding that Rouco's confession was not involuntary where Rouco was placed face-down on a hot parking lot pavement, handcuffed, detained at gunpoint, and subsequently placed in an unairconditioned squad car with the windows rolled up for 20 minutes because "any physical discomfort Rouco may have suffered at the arrest scene was not caused intentionally but stemmed from the agents' preoccupation with [the victim's] condition").

As discussed above, Young's first statement did not violate *Miranda* and was not the product of coercion. Therefore, the district court correctly found that the statement was admissible. Young's second, post-*Miranda*, statement was also

11

admissible because it was not tainted by any prior constitutional violation.

Accordingly, we affirm the district court's denial of Young's motion to suppress, as well as Young's conviction.

**AFFIRMED.**